JUSTIN SEUBERT, INCORPORATED, Plaintiff, *v.* CHARLES F. REIFF et al., Defendants.

(Supreme Court, Onondaga Trial Term, January, 1917.)

Labor Law, § 15 — labels of Cigarmakers' International Union — equity — conspiracy — malice — boycott.
Injunctions — allegations in complaint in action for — damages — evidence — liability of conspirators for damage caused by them — adoption of label — pleading.

At civil law, with few exceptions, malice does not make an act, otherwise innocent, done to accomplish a result otherwise legal, illegal even when two or more join in the act.

The label of the Cigarmakers' International Union which certifies "That the cigars contained in this box have been made by a first-class workman, a member of the Cigarmakers' International Union," and imposing certain limitations as to its use, and to whom it may be furnished, is authorized by section 15 of the Labor Law, which declares that a union may adopt a device "for the purpose of designating the products of the labor of the members thereof," and the owner of said label, or any one else, may recommend the purchase of goods on which it is placed, in preference to others.

The purpose of an authorized use of said label being to enable purchasers to determine whether or not cigars exposed for sale are made by union labor, neither a limitation that it shall not be used except where certain rates of wages prevail, nor upon machine made cigars, is unlawful.

A provision of said label, the usefulness of which depends upon its being to some extent a warranty of quality, that it shall not be allowed upon cigars selling for less than twenty dollars a thousand, is not improper; such limitation does not prohibit a manufacturer from making and selling such cigars, but simply prohibits him from attaching the label thereto.

If, however, dealers are threatened with loss or injury in case they sell either unlabeled goods generally or such goods when made by a certain manufacturer, there may be an injury to commerce, an effort to create a monopoly.

An act which, when committed in concert with others under certain circumstances, may cause such injury to the public or be so useless or so unfair that these conditions will be decisive as to whether such act is permissible or forbidden, is a secondary boycott, and must be held to be an unlawful interference with trade and commerce; those who agree to bring it about are engaged in a conspiracy and one injured by it may come to a court of equity for relief.

Where the complaint in an action for an injunction and damages alleges that defendants, all of whom are individuals or voluntary unincorporated associations, combined to compel the use of the union label upon cigars manufactured by plaintiff and that the use thereof under the conditions surrounding it was illegal, and it appears that efforts were made to prevent customers from selling its products; that this was done by picketing, by the distribution of cards calling such customers unfair, by disciplining union men who dealt with them or who

were employed by them and sold plaintiff's goods for them and by threatening those customers with loss of trade, a contention that the observance of the rules governing the use of said label, by manufacturers employing about one-third of the cigarmakers in the United States through agreement with the International Union, constitutes an unlawful combination in restraint of trade and consequently a scheme to compel plaintiff to join in its use, in an unlawful conspiracy, is without sufficient basis of claim, and there being not the slightest proof that many of the defendants were engaged in the conspiracy alleged, the complaint as to them must be dismissed.

That as against other defendants plaintiff will be granted an interlocutory judgment continuing the injunction as indicated herein, and a referee appointed to hear and determine what damages, if any, plaintiff has suffered by reason of the so-called secondary boycott.

Though to induce plaintiff to adopt the union label is a legal object, a combination to accomplish it by threatening expressly or by implication those who buy its goods with loss or injury to its trade is unlawful; all who join in such threats or in the acts of injury are conspirators and liable for the damages caused by them.

Action for an injunction and for damages.

David Paine and Walter Gordon Merrit, for plaintiff.

Costello, Burden, Cooney & Walters, for defendants Samuel Crouse and others.

Frank H. Collins, for defendant Charles F. Reiff.

Thomas H. Ward, for defendant James Burns, as president, etc.

Andrews, J. The complaint alleges and the plaintiff claims that the defendants, all of whom are individuals or voluntary unincorporated associations, combined to

compel the use of the so-called union label upon cigars manufactured by it; that the use of this label under the conditions surrounding it was illegal, and that they also combined to effect this design by unlawful means.

If the object to be obtained was innocent and if the means used were also innocent there was no conspiracy. The plaintiff has no remedy, however greatly it may be damaged. To say that because of fear of such damages it was forced to do this or that, or that the acts that caused the damages were done so it might be forced to adopt a certain course, does not alter this rule. At civil law, with few exceptions, malice does not make an act otherwise innocent, done to accomplish a result otherwise legal, illegal even when two or more join in the act.

I must find that certain of the defendants desired the plaintiff to use the union label and did certain things to effect that design. They may have had other purposes in mind. This purpose also was behind their acts. But was the design itself illegal?

The union label is owned and controlled by the Cigarmakers' International Union. About 10,000 factories in the United States employing about one-third of all the cigarmakers and producing annually something like 30,000,000 boxes of cigars have entered into an agreement to use this label.

The label itself certifies: " That the cigars contained in this box have been made by a first class workman, a member of the Cigarmakers' International Union." It is furnished to the manufacturers by the local unions. Certain limitations upon its use and as to the persons to whom it is to be furnished are imposed. Some relate to the wages of the workmen. Others prohibit its use upon machine made cigars; and its issuance to any except strictly union shops. If the manufacturer.

deals in " Chinese, tenement house or scab cigars," or if his name appears upon a box containing such cigars, the label may be refused at the option of the local union. A manufacturer using the label may not sell to another who is put upon the unfair list nor may brands made both in union and non-union shops bear the label. Finally, the label is not allowed upon any cigars which sell for less than twenty dollars a thousand.

The local union in Syracuse added to these rules a provision that manufacturers desiring the label must put it upon all their domestic cigars and must not deal in non-union cigars after notice. But this union was a mere agent to distribute labels for its principal, the International Union. I find no authority given it to amend or alter the rules adopted by the latter. Such discretion as is allowed it as to the issuance of the labels is clearly defined. I, therefore, consider these provisions immaterial.

The contention of the plaintiff is that the observance of these rules by 10,000 manufacturers through agreement with the International Union constitutes an unlawful combination in restraint of trade. Consequently the scheme to compel the plaintiff to join in its use is a conspiracy within the definitions which I have given.

I cannot find any sufficient basis for such claim. The authority to adopt such a label is given to the unions by statute. The very purpose of this authorized use is to enable purchasers to determine whether or not goods exposed for sale are made by union labor. The limitation that it shall not be used except where certain rates of wages prevail is clearly not unlawful. Neither is the provision that it shall not be used upon machine made goods. The usefulness of the label depends upon its being to some extent a warranty of quality, and to

this end there is nothing improper in the provision that it shall not be allowed upon cigars selling for less than twenty dollars a thousand. It in no way prohibits the manufacturer from making and selling such cigars. It simply prohibits him from attaching the label thereto.

The case of *Miles Medical Company* v. *Park,* 220 U. S. 373, to which the plaintiff refers, is not in point. There the argument concerned agreements " designed to maintain prices after the complainant has parted with the title to the articles and to prevent competition among those who trade therein."

The provision in regard to " Chinese, tenement house or scab cigars " in no way binds the manufacturer. He does not agree not to deal in such goods. In case he does certain options may be exercised by the local unions.

The provision prohibiting a manufacturer from selling to another upon the unfair list most nearly supports the plaintiff's claim.

Whatever might be said of this provision, however, had the existence of certain facts been shown, in the case at bar it is not important.

A manufacturer may not use the label who sells cigars to a manufacturer who is put on the unfair list. So far as I can discover no reference is made to an unfair list either in the constitution of the International or of the local union. The word only appears in that of the Trades Assembly. Nor is there any proof that the International Union has or ever had such a list. Before it can be said that conditions attached to the union label limit trade, such evidence must be given.

The question remains as to whether the defendants or any of them conspired to effect any purposes by unlawful means.

First as to the strike or strikes. Even if it be claimed, which I do not concede, that a strike may not be

declared by one union and approved and aided by others, without some interest, the use of the union label by manufacturers is a matter in which all are interested.

So picketing in aid of the strike is not in itself illegal. It only becomes so if accompanied by force, violence, trespass or other improper act.

Some sporadic and slight acts of violence are shown. They are long over and form no basis for an action in equity, or a finding of a conspiracy to commit them.

Efforts were made to prevent customers of the plaintiff from selling its products. This was done by picketing in one instance — by the distribution of cards calling such customers unfair — by disciplining union men who dealt with them or who were employed by them and sold the plaintiff's goods for them and by threatening those customers with loss of trade. It is said these acts violated both the state and the United States statutes.

A distinction must be drawn here. The statute of New York expressly states that the union may adopt a device " for the purpose of designating the products of the labor of the members thereof." Labor Law, § 15. I have no doubt that the union owning the label, or any one else, may recommend the purchase of goods on which it is placed, in preference to others.

The trouble arises if a further step is taken and dealers are threatened with loss or injury in case they sell either unlabeled goods generally or such goods made by a certain manufacturer. That may be an injury to commerce — an effort to create a monopoly.

It is true that it may be difficult to state the distinction between a primary and a secondary boycott. I use the word " boycott " without any implication that it is in itself and under all circumstances illegal. It may be said that if one persuade customers not to

patronize a certain dealer between whom and the union a quarrel exists, so one may persuade customers not to patronize one who deals with the first, and if this is lawful the dealer himself may be told that such a course is to be adopted. It may be said that the statutes referred to simply codify the common law and do not make wrongful what was not wrongful before their adoption.

But often when it is sought to draw a line between what is permissible and what is forbidden it is difficult to say logically why a certain act should be placed on the one side or the other. The courts must be governed in their action by common sense and considerations of public policy. An act may, when committed in concert with others under certain circumstances, cause such injury to the public and may be so useless or so unfair that these conditions will be decisive.

Such an act is a secondary boycott. It must be held to be an unlawful interference with trade and commerce. Those who agree to bring it about are engaged in a conspiracy. One injured by it may come to a court of equity for relief.

Who then engaged in the conspiracy here complained of? As against many of the defendants there is not the slightest proof. As to them the complaint must be dismissed.

But Cigarmakers' Union No. 6, The Central Trades and Labor Assembly, Division 580 of the Street Car Men, Machinists' Union No. 381, Charles F. Reiff, Samuel Crouse, Charles A. Yates, William Zeigler, Dennis and Joseph Charles are involved.

The mere fact that certain local unions are members of the Trades and Labor Assembly — that they sent delegates to that body — does not make them parties to the conspiracy if they took no affirmative action in the matter.

As against the defendants mentioned, therefore, the plaintiff is entitled to an interlocutory judgment continuing the injunction so far as is above indicated, and appointing a referee to determine what damages, if any, the plaintiff has suffered by reason of the so-called secondary boycott.

I have examined the cases cited by the counsel in their elaborate and able briefs. It would not be useful to discuss them or, where they are in conflict, to seek to distinguish one from the other. What is needed is a statement of the rules that prevail in this state, so far as they apply to this case.

Laborers may strike against their employers separately or together, for any reason or for no reason. Unless their object is illegal, outsiders, unions or individuals may agree to and may help them. Persuasion may be used to induce dealers or customers not to buy the employer's goods from him or in the market. Unions may make rules on this subject and may discipline members who violate these rules. Legal picketing as defined in *Foster* v. *Retail Clerks' Int. Pro. Assn.*, 39 Misc. Rep. 48, may be used. To induce the manufacturer to adopt the union label is a legal object.

Although the object is a legal combination to accomplish it by threatening expressly or by implication those who buy the employer's goods with loss of trade, or a combination to injure their trade, is unlawful. All who join in such threats or in the acts of injury are conspirators and are liable for the damages caused by them. Not only the dealers directly affected, but the original employer may recover such damages as the evidence shows they have severally suffered.

Judgment accordingly.