(April 28, 1922.)

W. P. ROBISON et al., Respondents, v. THE HOTEL AND RESTAURANT EMPLOYEES LOCAL No. 782, of BOISE, IDAHO, et al., Appellants.

[207 Pac. 132.]

Strike—Boycott—Picketing.

1. A right to conduct a business, together with the incidental right to the goodwill thereof, is property.

2. Laborers for wages have a right to form unions for the purpose of improving their economic and social conditions. They have a right to strike in concert for a lawful purpose. In aid of a lawful strike they have a right to acquaint the public with the fact of its existence and the causes thereof, and appeal, by peaceful persuasion, for public support and to request the public to withhold its patronage from the other party to the labor dispute.

3. A combination to strike to accomplish an object which is not regarded as lawful, or the use of illegal means in aid of a lawful strike, are wrongs for which the law affords a remedy.

Points Decided.

4. The means employed in aid of a lawful strike must be free from falsehood, libel or defamation, and from physical violence, coercion or moral intimidation.

5. The persuasion which the law permits in aid of a lawful strike is such as appeals to the judgment, reason or sentiment, and leaves the mind free to act of its own volition.

6. The constitutional guaranty of freedom of speech is not encroached upon by affording appropriate remedies for the abuse of the privilege of free speech.

7. The use of the words "Unfair to organized labor," if truthful, will not be enjoined. The use of expressions in aid of a strike which convey covert implications, calculated to defame, coerce or intimidate will be enjoined.

8. Posting of pickets on the street in front of a place of business does not of itself constitute a trespass upon the premises of the owner of the abutting property.

9. A lawful strike is not within the purview of sec. 18, art. 11, of the constitution, or secs. 2531 and 8512 of the Comp. Stats., commonly known as the anti-trust provisions of the constitution and statutes of the state of Idaho.

10. Placing of pickets in the street, in front of or near to a restaurant, necessarily results in intimidation and coercion of prospective customers, and is properly enjoined.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Charles F. Reddoch, Judge.

Publisher's Note.

7. Constitutional guaranty of free speech as authorizing boycott, see note in 15 **Ann. Cas.** 7; and as affording right to injunctive relief against boycott in industrial disputes, see note in 6 **A. L. R.** 971.

Publication that employer has been placed in "unfair list" of labor union as libelous, see notes in 15 **Ann. Cas.** 677; **Ann. Cas.** 1918B, 570.

Right of labor union to notify persons not to deal with certain individuals, see note in **L. R. A.** 1917E, 391.

Boycott as a weapon in industrial disputes, see notes in 103 **Am. St.** 488; 1 **Ann. Cas.** 177; 13 **Ann. Cas.** 86, 826; 16 **A. L. R.** 230; 6 **A. L. R.** 909.

10. Law as to picketing, see notes in 61 **Am. St.** 706; 13 **Ann. Cas.** 60; 9 **Ann. Cas.** 1222; **Ann. Cas.** 1918E, 54; 4 **L. R. A., N. S.,** 302; 50 **L. R. A., N. S.,** 412.

Action to enjoin picketing. Order issued granting injunction *pendente lite.* *Modified.*

Perky & Brinck, for Appellants.

Counsel for appellants do not attempt to segregate the authorities as to the different points involved, inasmuch as the authorities cited are in general a discussion of the whole subject involved in the case at bar, but for the convenience of the court, the authorities cited are here listed as follows: *Foster v. Retail Clerks,* 78 N. Y. Supp. 860, 39 Misc. 48; *Vegalahn v. Guntner,* 167 Mass. 92, 57 Am. St. 443, 44 N. E. 1077, 35 L. R. A. 722; *Iron Molders' Union v. Allis-Chalmers Co.,* 166 Fed. 45, 91 C. C. A. 631, 20 L. R. A., N. S., 315; *Karges Furniture Co. v. Amalgamated Woodworkers,* 165 Ind. 421, 6 Ann. Cas. 829, 75 N. E. 877, 2 L. R. A., N. S., 788; *Meier v. Speer,* 96 Ark. 618, 132 S. W. 988, 32 L. R. A., N. S., 793; *Parkinson v. Building Trades Council,* 154 Cal. 581, 16 Ann. Cas. 1165, 98 Pac. 1027, 21 L. R. A., N. S., 550; *Steffis v. Motion Picture Operators,* 136 Minn. 200, 161 N. W. 524; *L. D. Wilcutt & Sons Co. v. Driscoll,* 200 Mass. 110, 85 N. E. 901; 16 R. C. L. 450; *P. Reardon, Inc., v. Caton,* 178 N. Y. Supp. 713, 189 App. Div. 501; *Gill Engraving Co. v. Doerr,* 214 Fed. 111; *Gray v. Building Trades Council,* 91 Minn. 171, 103 Am. St. 477, 1 Ann. Cas. 172, 97 N. W. 663, 63 L. R. A. 753; 18 Am. & Eng. Ency. of Law, 2d ed., 87; *Union P. R. Co. v. Ruef,* 120 Fed. 102; Eddy, Combinations, 1031; *Marx etc. Clothing Co. v. Watson,* 168 Mo. 133, 90 Am. St. 440, 67 S. W. 391, 56 L. R. A. 951; *Waddey v. Richmond Type Union,* 105 Va. 188, 8 Ann. Cas. 798, 53 S. E. 273, 5 L. R. A., N. S., 793; *Master Bldrs. v. Domascio,* 16 Colo. App. 25, 63 Pac. 782; *Christensen v. Kellog etc. Co.,* 110 Ill. App. 61; *Cumberland Glass Mfg. Co. v. Glass Blowers,* 59 N. J. Eq. 49, 46 Atl. 208; *Natl. Pro. Assn. v. Cumming,* 170 N. Y. 315, 88 Am. St. 648, 63 N. E. 369, 58 L. R. A. 135; *Jones v. Van Winkle,* 131 Ga. 336, 127 Am. St. 235, 62 S. E. 236, 17 L. R. A., N. S., 848; *Tri-City Central Trades Council v. American Metal Foundries,* 238

Fed. 728, 151 C. C. A. 578; *Empire Theatre Co. v. Cloke,* 53 Mont. 183, 163 Pac. 107, L. R. A. 1917E, 383; *Ex parte Heffron* (Mo.), 162 S. W. 652; *Jones v. Van Winkle Machine Works,* 131 Ga. 336, 127 Am. St. 235, 62 S. E. 236, 17 L. R. A., N. S., 848; *Truax v. Bisbee Local,* 19 Ariz. 379, 171 Pac. 121; *White Mountain Freezer Co. v. Murphy,* 78 N. H. 389, 101 Atl. 357; Martin on Labor Unions, secs. 22, 60, 62, 72; 5 Pomeroy, Eq. Jur., 2d ed., secs. 2025, 2028, 2033; Martin on Labor Unions, sec. 169; *Krebs v. Rosenstein,* 66 N. Y. Supp. 42, 31 Misc. 661; *Levy v. Rosenstein,* 66 N. Y. Supp. 101, 52 App. Div. 443; *Mills v. United States Printing Co.,* 91 N. Y. Supp. 185, 99 App. Div. 605; *Butterick Pub. Co. v. Typographical Union No. 6,* 100 N. Y. Supp. 292, 50 Misc. 1; *Sona v. Aluminum Castings Co.,* 214 Fed. 936, 131 C. C. A. 232; *Goldfield Consol. Mines Co. v. Goldfield Miners' Union No. 220.* (Nev.), 159 Fed. 500; *Bittner v. West Virginia-Pittsburgh Coal Co.,* 214 Fed. 716, 131 C. C. A. 22; *W. A. Fletcher & Co. v. Internatl. Assn. of Machinists* (N. J. Eq.), 55 Atl. 1077.

Henry Z. Johnson and C. C. Cavanah, for Respondents.

"The cases all agree that the right to carry on a lawful business without obstruction is a property right, and one which the courts have never hesitated to protect, and its protection is a proper object for the granting an injunction." (*Local Union v. Stathakis,* 135 Ark. 86, 205 S. W. 450, 6 A. L. R. 894; *Coppage v. State of Kansas,* 236 U. S. 1, 35 Sup. Ct. 240, 59 L. ed. 441; Cooley on Torts, p. 278; *Gulf Bag Co. v. Suttner,* 124 Fed. 468; *Coeur d'Alene Cons. & Min. Co. v. Miners' Union,* 51 Fed. 260, 19 L. R. A. 382; *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. ed. 220; *Barr v. Essex Trades Council,* 53 N. J. Eq. 101, 30 Atl. 881; *Adair v. United States,* 208 U. S. 161, 13 Ann. Cas. 764, 28 Sup. Ct. 277, 52 L. ed. 436; *St. Germain v. Bakery & Conf. Union,* 97 Wash. 282, 166 Pac. 665.)

The continuous acts of the pickets constituted a continuing trespass and an intolerable nuisance which equity will

enjoin. (*Hughes v. Kansas City Motion Picture Operators,* 282 Mo. 304, 221 S. W. 95; *Moore v. Cooks & Waiters' Union,* 39 Cal. App. 538, 179 Pac. 417; *Truax v. Corrigan,* 257 U. S. ——, 42 Sup. Ct. 124, 66 L. ed. 132; *Iverson v. Dilno,* 44 Mont. 270, 119 Pac. 719; *Baldwin Lumber Co. v. Local Brotherhood etc.* (N. J. Eq.), 109 Atl. 147.)

The right of an abutting owner to protect his ingress and egress from the street, as against an unlawful obstruction where he is specially damaged thereby, is based on the fact that such right of access is a property right, interference with which constitutes sufficient ground to enable him to maintain a suit in equity. (*Donovan v. Pennsylvania Co.,* 120 Fed. 215, 57 C. C. A. 362, 61 L. R. A. 140; *Adams v. Rivers,* 11 Barb. (N. Y.) 390.)

"The privilege of free movement on the streets and of free speech belong to defendants, but not to the extent that they might be exercised (for no legitimate purpose of defendants) in a place and manner and with the intention to annoy and damage plaintiffs." (*Hughes v. Kansas City Motion Picture Operators,* 282 Mo. 304, 221 S. W. 95; *Iverson v. Dilno, supra; Beck v. Railway Teamsters Protective Union,* 118 Mich. 497, 74 Am. St. 421, 77 N. W. 13, 42 L. R. A. 407.)

The picketing described in the complaint, and admitted by the defendants, is unlawful, and is not made lawful by the defendants' want of malice against the plaintiffs, or because of their purpose of economic betterment. (*Webb v. Cooks & Waiters' Union* (Tex. Civ.), 205 S. W. 465, 467; *Local Union v. Stathakis, supra; Barr v. Essex Trades Council, supra; Parker Paint & Wallpaper Co. v. Local Union,* 87 W. Va. 631, 16 A. L. R. 222, 105 S. E. 911; *Seattle Brewing & Malting Co. v. Hansen,* 144 Fed. 1011.

The picketing herein is "inherently illegal, for the reason it is inseparably associated with acts that are indisputably illegal, and that is the growing tendency of the weight of authority." (*Rosenberg v. Retail Clerks' Assn.,* 39 Cal. App. 67, 177 Pac. 864; *Barnes & Co. v. Chicago Typo.*

*Union,* 232 Ill. 424, 83 N. E. 940, 14 L. R. A., N. S., 1018; *Atchison, T. & S. F. R. Co. v. Gee,* 139 Fed. 582; *Moore v. Cooks & Waiters' Union, supra; Schwartz & Jaffee v. Hillman,* 189 N. Y. Supp. 21, 115 Misc. 61; *Union Pac. R. Co. v. Ruef,* 120 Fed. 102; *Frank v. Herold,* 63 N. J. Eq. 443, 52 Atl. 152; *Franklin Union v. People,* 220 Ill. 355, 110 Am. St. 248, 77 N. E. 176, 4 L. R. A., N. S., 1001; *Hitchman Coal & Coke Co. v. Mitchell,* 38 Sup. Ct. 65; *Vegelahn v. Guntner,* 167 Mass. 92, 57 Am. St. 443, 44 N. E. 1077, 35 L. R. A. 722; *Truax v. Corrigan, supra; Kueffel & Esser v. International Assn. of Machinists* (N. J. Eq.), 116 Atl. 9; *Campbell v. Motion Picture etc. Operators Union* (Minn.), 186 N. W. 781; *Duplex Printing Press Co. v. Deering,* 254 U. S. 443, 16 A. L. R. 196, 41 Sup. Ct. 172, 65 L. ed. 349; *American Steel Foundries v. Tri-City C. T. Council,* 257 U. S. ——, 42 Sup. Ct. 72, 66 L. ed. 103.)

RICE, C. J.—Respondents are proprietors of certain restaurants in Boise. The appellants are members and officers of the Hotel and Restaurant Employees Local No. 782 of Boise, which is a voluntary unincorporated association, or labor union.

In their complaint, respondents allege:

"That the defendants did on or about the twentieth day of March, 1920, order all of the employees of the plaintiffs then belonging to the said The Hotel and Restaurant Employees Local No. 782 of Boise, Idaho, to strike and cease at once working for or continuing in the employment of the plaintiffs at the plaintiffs' said places of business, and in compliance with said order, all of the said employees of the plaintiffs left the plaintiffs' employment and places of business; that since that date the plaintiffs have endeavored to carry on their said business, and to employ other men and women to fill the places of those who left the employ of the plaintiffs, but the defendants, their agents and servants, have in pursuance of said order and a conspiracy and a confederation and combination entered into by and among

them to carry out said strike, did unlawfully, wilfully, and maliciously on the twentieth day of March, 1920, establish and ever since have maintained a boycott of the plaintiffs' said business by placing and maintaining immediately in front of and close to the entrances of the plaintiffs' said places of business on the sidewalk, a picket patrol during the hours of from 7 to 9 o'clock A. M. and from 11 A. M. to 2 o'clock P. M. and from 5 P. M. to 8 o'clock P. M., which are and were the hours of the day when the greatest number of meals are served by the plaintiffs to their patrons. That the pickets of said picket patrol are now and have been during said hours unlawfully, wilfully and maliciously wearing a badge consisting of a plain, white placard pinned upon their clothing where the same can plainly be seen, with the words 'This house is unfair to organized labor,' and have been and are during said hours carrying the same back and forth on said sidewalks immediately in front of and close to the entrances of the plaintiffs' said places of business, and while doing so are now and have been during said hours, unlawfully, wilfully and maliciously calling out in a raucous voice to the patrons and prospective patrons of the plaintiffs and persons passing by and to patrons when entering and leaving the plaintiffs' said places of business, 'This house is unfair to organized labor; why patronize an unfair house; why not patronize a house with organized labor. This house is unfair to organized labor; why not patronize a union house; go where they have all white help. This beanery is on the bum. Why not patronize a union house and you won't have to turn your back to the public and you will not be ashamed. This house is unfair and will be unfair to you,' and that by reason thereof the defendants are now and have been during said hours unlawfully, willfully and maliciously threatening and intimidating persons who desire to enter the plaintiffs' said places of business for the purpose of engaging in the employment of the plaintiffs, and the patrons and prospective patrons of the plaintiffs and persons passing by said places of business which is and has de-

terred such persons from entering and patronizing the plaintiffs' said places of business, and entering the employ of the plaintiffs and is calculated and intended to give notice, and does give notice, to such persons passing the plaintiffs' said places of business or intending to patronize the same, that said places of business were under boycott and that its patronage was opposed by organized labor. That by reason of the presence of said pickets and the unlawfully, wilfully and maliciously maintaining of the said picket patrol and the threats and intimidations as aforesaid by the defendants, a great many of the plaintiffs' patrons have been intimidated and in consequence thereof have ceased to and refrained from patronizing the plaintiffs' said places of business, and that they will continue so to do as long as said pickets are maintained in front of the plaintiffs' said places of business and said boycott continues, and have diverted a large part of plaintiffs' said business, reducing their daily receipts by large sums, averaging from $180 to $75 per day of the said business of the plaintiffs W. P. Robison and O. C. Robison, and from $350 to $200 per day of said business of the plaintiffs Charles Peroni, Vincent Peroni and Earnest Jaegar, and from $175 to $75 per day of said business of the plaintiffs E. Wood and H. D. Mix and from $250 to $150 per day of said business of the plaintiff Jim Kelly, and from $90 to $50 per day of said business of the plaintiff Jake Geb, and from $200 to $85 per day of said business of the plaintiffs Jack Troy, W. E. Reber and A. W. Liedloff.

"That all of said acts and conducts of the defendants were and are a part of a scheme to prevent persons from entering the employment of the plaintiff, and continuing in their employment, and from patronizing them at their said places of business; that the defendants threatened and intend to continue their said unlawful, wrongful, wilful and malicious acts and conducts, and that they and their agents and servants are now and have been ever since said boycott and picketing were established a nuisance and ob-

struction to the plaintiffs and to persons in their employ, or intending to trade with or patronize the plaintiffs at their said places of business.''

Appellants demurred to the complaint. Upon the filing of the complaint, the court issued an order to show cause why an injunction *pendente lite* should not be granted, and also entered a restraining order requiring that appellants, `` . . . . absolutely desist and refrain from in any manner interfering with or hindering or obstructing plaintiffs and each and every of them, whether by picketing or otherwise, in the free use and enjoyment and occupancy of their several properties, property rights and business and the conduct thereof; and from entering thereon or therein or in any manner coercing or compelling or inducing or attempting to coerce or induce by any species of threat, intimidation, force or fraud or violence any employees of plaintiffs or either of them from performing their several duties within the scope of their several employments or service; and from preventing or attempting to prevent by any species of threat, intimidation, force or fraud or violence any person or persons from entering the employment or service of plaintiffs or either of them; and from preventing or attempting to prevent by any species of threat, intimidation, force or fraud or violence, expostulation or entreaty, patrons or prospective patrons of plaintiffs or either of them, or any other person or persons from trading with or transacting business with plaintiffs or either of them and from harassing or annoying them with insults, gibes or jeers or language importing the same or displaying on their person or aloft placards or banners or other emblems or insignia containing covert or open or other threats or intimidations or the like to the annoyance of plaintiffs' patrons or prospective patrons, or other person or persons, while going about their business to or from or with plaintiffs' or each and every of them; and from parading in front of or congregating whether singly or collectively, in the vicinity of the entrance to or at or near the premises of the plaintiffs herein and each and every of them, as follows, to wit:

. . . . for the purpose of intimidating or threatening, whether by force or fraud or coercion or expostulation, plaintiffs' employees or patrons or prospective patrons or any other person or persons from trading with or continuing in the employment of, or seeking employment with plaintiffs or either of them; and from engaging in what is commonly known and designated as picketing, or establishing and maintaining a picket patrol in any manner whatever, whether singly or collectively, the entrances to the several premises hereinbefore described of the plaintiffs herein or adjacent thereto or in the vicinity thereof."

Upon the return day of the order to show cause, appellants filed affidavits to the effect that pickets were instructed to and did walk at least ten feet away from the buildings wherein the business of respondents was conducted, and that they were instructed to and did make no remarks except in an ordinary tone of voice; that not more than two pickets were so engaged at any one time and place, and that for the most part the pickets were waitresses belonging to appellants' organization. The affidavits further stated that appellants were not actuated by malice against respondents, and that the picketing was not conducted with the purpose or intent of destroying the business of respondents, or damaging the same; but was conducted for the sole purpose of the economic betterment of the members of the organization as laborers and in pursuance and furtherance of the purposes of the strike; that the means used were not calculated to and did not intimidate any person or persons from exercising their own free will as to patronizing or not patronizing the respondents' places of business.

Questions similar to those here for review have recently been considered by the supreme court of the United States in the cases of *American Steel Foundries v. Tri-City Central Trades Council et al.*, 257 U. S. ——, 42 Sup. Ct. 72, 66 L. ed. (Adv. Op.) 103, and *Truax v. Corrigan*, 257 U. S. ——, 42 Sup. Ct. 124, 66 L. ed. (Adv. Op.) 132. In the latter case it was held that a statute of the state of Arizona, very similar to section 20 of the Clayton Act, 38 Stat. at L.

738, chap. 323, Comp. Stats., sec. 1243d, 6 Fed. Stats. Ann., 2d ed., p. 141, was invalid as obnoxious both to the due process clause and the equal protection clause of the 14th Amendment to the federal constitution. Idaho has no such statute.

In the case of *Keuffel & Esser v. International Assn. of Machinists et al.* (N. J. Eq.), 116 Atl. 9, the New Jersey court of errors and appeals appears to have assumed that the decision of the supreme court in the Tri-City case was of controlling authority in cases arising in the state courts. The court said: "Since the present case was argued, the supreme court of the United States has decided the general principle underlying the present facts in a case that has been pending for several years, since, at the latest, 1916. (*Tri-City Central Trades Council et al. v. American Steel Foundries,* 238 Fed. 728, 151 C. C. A. 578; *American Steel Foundries v. Tri-City Central Trades Council et al.,* 257 U. S. ——, 42 Sup. Ct. 72, 66 L. ed. 103.) The authority of that high tribunal is of such weight as to be practically controlling on us in a class of cases in which it must often, and may always, have the full force of a binding authority. It would be unwise in us to assume to sit in review even if the reasoning of the opinion did not commend itself to our minds as in fact it does."

What was said by the supreme court in the case of *Truax v. Corrigan* as to the equal protection of the laws can have no bearing here, since our statute relating to injunctions contains no exceptions as to any classes of persons, but applies alike to all persons within the jurisdiction of the courts of this state. With reference to the due process clause of the federal constitution, the court said:

"A law which operates to make lawful such a wrong as is described in plaintiffs' complaint deprives the owner of the business and the premises of his property without due process, cannot be held valid under the 14th Amendment.

"The opinion of the state supreme court in this case, if taken alone, seems to show that the statute grants complete

immunity from any civil or criminal action to the defendants, for it pronounces their acts lawful.''

The court was dealing with a statute enacted by the legislature of a state. Whether it was intended to hold that a like limitation exists as to the power of a state, acting through its courts, in giving effect to its common law, is not clear. Mr. Justice Holmes, in his dissenting opinion, alludes to the matter as follows: ''I cannot understand the notion that it would be unconstitutional to authorize boycotts and the like in aid of the employees' or the employers' interest by statute when the same result has been reached constitutionally without statute by courts with whom I agree.''

A right to conduct a business is property. Incident to this property right is the goodwill of the business, and the right to appeal to the public for patronage. One may conduct his business in his own way, and may employ whom he will upon such terms as may be agreed upon, and may discharge any employee at will unless restrained by a valid contract so long as he violates no law. These rights are entitled to the protection of the law. But because of the conflicts which sometimes arise between absolute rights, the law does not afford a remedy for every interference with or encroachment upon rights as such.

Those who labor for wages have certain rights equally unquestioned. They may contract for employment on whatever terms they see fit, and unless restrained by a binding contract, may cease employment when they please. They have a right to form unions for the purpose of improving their economic and social conditions, or to refrain from joining such unions if they choose. They have a right to strike in concert when the object of the strike is for their collective benefit. They have a right to acquaint the public with the fact of its existence and the causes thereof, and appeal for sympathetic aid by a request to withhold patronage. (*Truax v. Corrigan, supra.*)

It is clear that any resort to the primary boycott, if in any degree successful, will result in damage to the business

of the person boycotted; but where it is lawfully conducted this is one of the inconveniences for which the law does not afford a remedy.

A combination to strike for the purpose of accomplishing an object which is not regarded as lawful, or the use of illegal means in aid of a lawful strike, are wrongs for which the law affords a remedy. (*Duplex Printing Press Co. v. Deering et al.*, 254 U. S. 443, 16 A. L. R. 196, 41 Sup. Ct. 172, 65 L. ed. 349.)

In the case at bar, no question is raised as to the legality of the object for which the strike was called. The question we must decide relates entirely to the legality of the means employed in aid thereof. Speaking generally, the means employed must be free from falsehood, libel or defamation, and from physical violence, coercion or moral intimidation.

"The persuasion that the law permits in these circumstances is such as appeals to the judgment, reason or sentiment, and leaves the mind free to act of its own volition. Where there is no such freedom of action, more than persuasion has been exercised, and it amounts to duress, intimidation, coercion, or other like influence." (*McMichael v. Atlantic Envelope Co.*, 151 Ga. 776, 108 S. E. 226.)

In challenging the legality of the means used in this case, respondents ·call attention to the language employed by appellant and their representatives in appealing to the public, and also to the stationing of pickets in front of their respective places of business.

Confining our attention first to the language used: We do not think the right of free speech guaranteed by sec. 9, art. 1, of our constitution, is directly involved. We are concerned only with the abuse of the freedom of speech. The law accords the remedy of injunction in this class of cases only because of the inadequacy of the ordinary remedies at law.

We think it is clear that the words, "This house is unfair to organized labor," printed upon a placard, are permissible. The expression "Unfair to organized labor" is a term well understood and is thus defined in *Parkinson*

*v. Building Trades Council*, 154 Cal. 581, 16 Ann. Cas. 1165, 98 Pac. 1027, 21 L. R. A., N. S., 550: "In reference to the word 'unfair,' it clearly appears that, as employed by the defendants and labor organizations generally, it has a technical meaning well understood by the plaintiff and by all the persons to whom the council sent notices that plaintiff had been declared unfair. Such declaration means, and in this instance was understood by all parties concerned to mean, not that the plaintiff had been guilty of any fraud, breach of faith, or dishonorable conduct, but only that it had refused to comply with the conditions upon which union men would consent to remain in its employ or handle material supplied by it." (See, also, *Greenfield v. Central Labor Council* (Or.), 192 Pac. 783; *Empire Theatre Co. v. Cloke*, 53 Mont. 183, 163 Pac. 107, L. R. A. 1917E, 383.) Neither do we think legitimate objection can be made to the words, "This house is unfair to organized labor; why patronize an unfair house; why not patronize a house with organized labor." The expression, "This house is unfair to organized labor; why not patronize a union house; go where they have all white help," is legitimate or not according to the truthfulness or falsity of the implication that the house is employing other than white help. The expression "This beanery is on the bum" cannot be upheld. Although it may not have been intended seriously, it carried with it an implication of deterioration of service and is not permissible. The expression "Why not patronize a union house and you won't have to turn your back to the public and you will not be ashamed," is not permissible, because this evidently was intended to cause moral intimidation upon the patrons of the place and doubtless with many people would have that effect. Neither do we think justifiable the expression "This house is unfair and will be unfair to you." This was addressed to the patrons of the restaurants, and when addressed to the public generally carried an implication of dishonesty or lack of integrity.

The most important question for consideration in this case arises out of the action of the trial court in enjoining

the stationing of pickets in front of and near to the respective places of business of respondents. It is a case of first impression in this state.

It is claimed by respondents that the pickets were guilty of trespassing upon their property; that although the streets have been dedicated to the use of the public, the title in front of their property to the center of the street is vested in the owner and the dedication is only to the usual and customary user by the public. We are of the opinion, however, that the lawfulness of the use of the streets by appellants must be determined solely by considerations other than those growing out of the ownership of the servient estate. The pickets constitute a portion of the public for whose use the streets were dedicated. The owner cannot object to an unlawful use on their part because of his ownership of the soil, for by the very act of dedication he has divested himself of that right. He must have some other basis for his objection, such, for instance, as the creation of a private or public nuisance. The special rights of free access and egress enjoyed by the owner of abutting property rest upon a different basis.

Our attention has been called to the case of *Campbell v. Motion Picture Machine Operators Union* (Minn.), 186 N. W. 781. In that case it was held that a combination to boycott a motion picture theatre is one in restraint of trade, and forbidden by the terms of the anti-trust statute of Minnesota (sec. 8973, Gen. Stats. 1913). There are both statutory and constitutional provisions somewhat similar in this state. (C. S., secs. 2531 and 8512; Const., sec. 18, art. 11.) We are of the opinion, however, that this case does not fall within the purview of those statutory and constitutional provisions. The purpose of appellants was not to fix the price or regulate the production of any article of trade or commerce, but to better their own economic condition. Labor is not a commodity, or an article of commerce within the meaning of our constitution and statutes. The anti-trust statute of the state of Texas referred to in

*Webb v. Cooks, Waiters & Waitresses Union No. 748* (Tex. Civ.), 205 S. W. 465, is materially different.

On behalf of appellants it is urged that having a right to acquaint the public with the facts concerning the strike, and to appeal for sympathetic aid, they should be permitted to make use of this right in the most effective manner, by bringing the knowledge of their dispute with respondents to the notice of intending patrons; that they should be permitted to go where the patrons are most likely to be, and that they are therefore within their rights so long as they are peaceable and their conduct is not unseemly and so long as they do not obstruct the entrance to or egress from the business houses of respondents. There is much force in this position. But in our opinion it is overcome by the fact that the act of stationing pickets in front of places of business of respondents inevitably leads to results directly opposite to appellants' intentions and protestations.

It is said that the term "peaceful picketing" involves a contradiction in terms; that the word "picket" carries with it a sinister implication and is selected from the nomenclature of war. (*Truax v. Corrigan, supra.*) Accordingly, in the case of *American Steel Foundries v. Tri-City C. T. Council, supra,* it was held that while picketing should be enjoined *eo nomine,* the defendants in that case would be entitled to station at each point of ingress, or egress from the company's works, one "missionary." We are concerned with facts rather than names.

In the case of *Pierce v. Stablemen's Union, Local No. 8760,* 156 Cal. 70, 103 Pac. 324, it is said: "The inconvenience which the public may suffer by reason of a boycott lawfully conducted is in no sense a legal injury. But the public's rights are invaded the moment the means employed are such as are calculated to, and naturally do, incite to crowds, riots and disturbances of the peace. A picket, in its very nature, tends to accomplish, and is designed to accomplish, these very things. It tends to, and is designed by physical intimidation to, deter other men from seeking employment in the places vacated by the strikers. It tends,

35 Idaho—28

and is designed, to drive business away from the boycotted place, not by the legitimate methods of persuasion, but by the illegitimate means of physical intimidation and fear. Crowds naturally collect; disturbances of the peace are always imminent and of frequent occurrence. Many peaceful citizens, men and women, are always deterred by physical trepidation from entering places of business so under a boycott patrol. . . . . We think it plain that the very end to be attained by picketing, however artful may be the means to accomplish that end, is the injury of the boycotted business through physical molestation and physical fear, caused to the employer, to those whom he may have employed, or who may seek employment from him, and to the general public.''

Where the principal purpose of picketing is to appeal to the intending patrons, consisting of men, women and children, of a business house, such as a restaurant, we think the following from the opinion in the case of *Local Union No. 313 v. Stathakis,* 135 Ark. 86, 6 A. L. R. 894, 205 S. W. 450, is worthy of consideration: ''And can there be any real question as to the meaning of the presence of the pickets? Were they not doing something more than giving notice to the public that they had an undecided issue with the business which they were picketing? Were they not saying, even though it was silently said: 'See what we are doing to this man, because he has incurred our displeasure? Beware a similar fate!' And was it not necessarily true that many people who had no knowledge or opinion in regard to the existing controversy, and who felt no interest in the terms of its final settlement, were deterred from according the patronage which might otherwise have been given appellee, simply because there was a controversy in which they did not desire to even appear to be parties?''

In view of the thought suggested by this quotation, added emphasis is placed upon the allegation of the complaint that prospective patrons of the respondents were deterred by intimidation from entering respondents' places of business.

We confine our decision to the facts presented by the case at bar. We are not dealing in this case with questions which might arise in a case where a manufacturing or other plant, having no direct dealings with the general public, is involved, nor with any question relating to a secondary boycott. We conclude that the stationing of pickets in front of or near to respondents' places of business in this case was necessarily intimidating in character, and was properly enjoined. This does not mean, however, that appellants are to be debarred from the use of the streets generally, or from displaying truthful placards and banners, or using other legitimate means of appealing for support.

Reference to the notes found in 6 A. L. R. 909, and 16 A. L. R. 230, will direct those interested to many of the authorities dealing with the matters herein discussed.

We come now to the terms of the injunction issued by the trial court. In view of the foregoing discussion, and the facts disclosed by the record, the injunction was broader than is justified. There was no occasion to enjoin the use of force or violence, since none had been used or was threatened. The injunction should not require the appellants to absolutely desist or refrain from in any manner interfering with the business of respondents. Neither should it include every species of expostulation or entreaty.

The case is remanded, with directions to modify the injunction so as to accord with the views herein expressed. No costs awarded.

Budge, McCarthy, Dunn and Lee, JJ., concur.