PARAMOUNT ENTERPRISES, INC., a Florida Corporation, *Appellant,* vs. ROY W. MITCHELL and LOCAL ASSOCIATION OF MOTION PICTURE OPERATORS OF MIAMI, a Voluntary Unincorporated Association of Motion Picture Operators, *Appellees.*

140 So. 328.

Division B.

Opinion filed March 10, 1932.

408

*Milam, McIlvaine & Milam,* for Appellant;
*Robert R. Taylor, Jr.,* for Appellees.

TERRELL, J.—Appellant as complainant below filed its bill of complaint in the Circuit Court of Dade County seeking to restrain the appellees as defendants from picketing or otherwise interfering with its theatre business in Miami, Florida. An application for temporary restraining order was denied and while the record does not so appraise us it is admitted by counsel for both parties that a motion of defendants to dismiss the bill of complaint was verbally overruled by the Chancellor. This appeal is from the decree of the Chancellor denying the application of complainant for temporary restraining order.

As a preface to an adjudication of the main question we are confronted here with an application for temporary restraining order pending the disposition of the cause on appeal, said application being grounded on that provision of Section Five of Article Five of the Con-

stitution of Florida which empowers this Court to "issue all writs necessary or proper to the complete exercise of its jurisdiction."

We have considered applications for "writs" under this provision of the Constitution, injunctive in their nature, in the following cases: Cohen vs. L'Engle, 24 Fla. 542, 5 So. 235; Jacksonville Electric Light Co. vs. City of Jacksonville, 36 Fla. 229, 18 So. 677; Wheeler vs. Meggs, 75 Fla. 687, 78 So. 685; Astca Investment Company vs. County of Lake et al., 86 Fla. 639, 98 So. 824; and Stuart vs. Thursby, 103 Fla. 990, 137 So. 7,; Maxcy Inc. vs. Mayo, Comr., 103 Fla. 552, 139 So. 121; Wester vs. Belote, 103 Fla. 976, 138 So. 721.

The net result of our holding in these cases is to the effect that this Court is not clothed with original jurisdiction of the writ of injunction, that in equity cases it has appellate jurisdiction only, that by virtue of the quoted provision of the Constitution it is empowered to and may issue injunctive or any other writs essential to the complete exercise of its jurisdiction, but that it will not invoke the power so granted except in cases carefully investigated and a showing made that the writ sought is indispensable to protect the rights of the party seeking it, or that the law affords no other remedy, or that some constitutional or statutory provision is about to be violated, or that the rights in litigation are of such peculiar or intrinsic value or nature that the facts of the case make it imperative that they be held in status quo pending the adjudication of the cause on appeal.

In Antuono vs. City of Tampa, 87 Fla. 82, 99 So. 324, and Anderson vs. City of Ocala, 87 Fla. 257, 99 So. 667, we were also confronted with an application for temporary restraining order pending the disposition of the cause on appeal and we there held that when appeal has been taken from an order denying an injunction and application is made to this Court for an injunctional order

in aid of its appellate jurisdiction, predicated on the organic power to issue "all writs necessary or proper to the complete exercise of its jurisdiction" and the questions presented are of law only, and the cause has been by consent fully argued on the merits, the Court may in the interest of the public good, determine the merits of the appeal without passing on the application for a preliminary injunction.

The case at bar is in this category and will be disposed of on the merits without reference to the application for temporary restraining order. It presents the sole question of whether or not picketing one's theatre or place of business may be enjoined in this state.

Picketing as employed in this case has reference to its use in promoting the strike, boycott, or some other industrial dispute. The "boycott" is of somewhat doubtful origin or significance but the lexicographers and courts have defined it as being a combination of many persons to cause loss to some other person, natural or corporate, by coercing others, against their will, to withhold from said person, natural or corporate, their business or trade. It is accomplished by threats on the part of "many persons" that unless the "others" do so the "many persons" will cause loss to them. Century Dictionary; Beck vs. Railway Teamsters' Protective Union, 118 Mich. 497, 77 N. W. 13. When the coercion extends to customers of the person or persons boycotted and attempts to coerce them on pain of being boycotted themselves unless they refrain from dealing with the person boycotted it is called a secondary boycott. Picketing by members of a trade union consists in posting one or more of its members at the entrance or approaches to the office, work shops, or other places of business against which a strike or boycott is being conducted for the purpose of watching or annoying the owner or workmen on the in-

side or for the purpose of interfering with the business or intimidating its patrons. Black's Law Dictionary; Beck vs. Railway Teamsters' Protective Union, supra.

In its more modern significance, the term boycott connotes a variety of action, ranging from a mere withdrawal of business by an individual to an organized effort by associated individuals to procure all others to withdraw from such intercourse. It is accomplished by means ranging from simple persuasion to the disturbance of business relations with third persons and the person boycotted by physical intimidation or violence. Accordingly boycotts are sometimes referred to as being divided into two classes, primary and secondary, the primary boycott consisting simply of the cessation of concerted action, actions, or dealings with the one boycotted, while in the case of the secondary boycott, an attempt is made to procure parties outside the combination to cease dealings as well. American Federation of Labor vs. Bucks Stove and Range Company, 33 App. D. C. 83, 32 L. R. A. (N. S.) 748, text 770; Pierce vs. Stablemen's Union Local No. 8760, 156 Cal. 70, 103 Pac. 324.

Notwithstanding the wealth of authority on the subject, the law as to boycotting and picketing is in a more or less confused state due to differences in economic sympathies of courts, their method of approach to, and differences of opinion among them as to the fundamental question involved in all such controversies, viz., "the extent to which it is expedient to permit organized labor to utilize the powers of its organization for the purpose of securing for its members not only direct benefits in a particular employment, but also the indirect benefit arising from the control of the sources of employment." The decision of each case must necessarily turn on the facts adduced as applied to this fundamental question,

so it becomes necessary to discuss the different judicial theories giving rise to the confusion of opinion.

The law recognizes the right of the trades, crafts, guilds, and arts, whether composed of skilled or unskilled workmen, to organize and invite others to join them. When organized, they may use the organization to promote their social, civic, and economic betterment, among other things, that of securing as much as they can for their labor. Employers may also organize for similar purposes and for the purpose of securing the best possible return on their capital. Every other profession and business may organize for like purposes but when organized, the law recognizes no distinctions among them but all must conform alike to its decrees and mandates. Every organization including its individual members is bound and protected by social and constitutional guaranties that all must respect, among which is the right to peacefully own property and enjoy the pursuit of a trade, business, or profession. The law will not permit such rights to become a prey to those who would without just cause invade them.

It is well settled that employees have a right to combine and fix the amount of their daily wage and to whom they will sell it. It is also true that when not under contract they may quit the services of another at any time they desire. It is alike true that employers have the right to determine the daily wage they are willing to pay and who they will employ. Members of a labor organization may persuade their confederates not to work except on payment of an established wage; they may, without coercion bring their cause to the court of public opinion in a peaceful manner; but neither employer nor employee is permitted to use threats, force, violence, coercion, or intimidation in doing this, nor will employer or employee be permitted to present, urge, or advertise his cause by false statements, libelous attack, insulting language, de-

rogatory implications, or by other means calculated to become a nuisance, obstruct traffic, or in any way to impede or hinder the orderly course of business or other relations. Note 27 A. L. R. 651. Under any other rule every legitimate business would be subject to the whim of anyone having opposing views as to the method of its operation.

But, appellees contend that the picketing complained of was peaceful picketing against which there is no law in this state. Some jurisdictions hold that there is no such thing as "peaceful picketing" and consequently that all picketing is per se unlawful. Pierce v. Stablemens' Union, Local No. 8760, 156 Cal. 70, 103 Pac. 324; St. Germain vs. Bakery & Confectionary Workers' Union No. 9 of Seattle, 97 Wash. 282, 166 Pac. 665. In other jurisdictions, "peaceful picketing" is permitted for the purpose of notifying the public of the existence of an unsettled industrial dispute. In re Heffron, 179 Mo. App. 639, 162 S. W. 642; Empire Theater Company vs. Cloke, 53 Mont. 183, 163 Pac. 107; Justin Seubert, Inc. vs. Reiff, 98 Misc. 402, 164 N. Y. S. 522.

Still other jurisdictions hold that picketing by members of labor organizations for the sole purpose of peaceful persuasion, argument, or entreaty is not unlawful or actionable; Root v. Anderson (Mo. App.), 207 S. W. 255; Steffes vs. Motion Picture Machine Operators' Union of Minneapolis, 136 Minn. 200, 161 N. W. 524; Empire Theater Company vs. Cloke, 53 Mont. 183, 163 Pac. 107; Segenfeld vs. Friedman, 193 N. Y. S. 128, 177 Misc. Rep. 731; Truax vs. Bisbee Local No. 380; Cooks' & Waiters' Union 19, Ariz. 379, 171 Pac. 121. The last cited case is predicated on a local statute and some others in this list are based on peculiar constitutional provisions.

The substance of this variety of adjudications is that the question of whether or not picketing is unlawful per se, or may be used as a method of advising the public of

a labor dispute, has received the careful consideration of courts throughout this and other countries. The cases in the various jurisdictions are in hopeless conflict due to causes herein stated, but the decided current of Federal authority is to the effect that picketing is unlawful. Some state jurisdictions hold that it is not unlawful, others hold that it is, while the growing tendency appears to hold it illegal because it is inseparably associated with acts which are illegal. Jethan Dekle Lumber Co. vs. Mather, 53 Fla. 969, 43 So. 590. Auburn Draying Co. vs. Wardell, 227 N. Y. 1, 124 N. E. 97, 6 A. L. R. 901, note 909, 932; Gompers vs. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. Rep. 492, 55 L. Ed. 797,; Truax vs. Corrigan, 357 U. S. 312, 42 Sup. Ct. Rep. 124, 66 L. Ed. 254; Robinson vs. Hotel & Restaurant Employees, Local No. 782 of Boise, 35 Idaho 418, 207 Pac. 132, 27 A. L. R. 642; Franklin Union No. 4 vs. People, 220 Ill. 355, 77 N. E. 176; Begelahn vs. Guntner, 167 Mass. 92, 44 N. E. 1077; Jensen vs. Cooks' & Waiters' Union of Seattle, 32 Wash. 531, 81 Pac. 1069, 16 R. C. L. 456, 32 C. J. 172; Olympia Operating Co. vs. Costello et al., Mass. Sup. Jud. Ct., decided January 26, 1932.

The bill of complaint in this case in effect alleges that the defendants by their affirmative acts conspired to injure the plaintiffs in their business by frightening and intimidating the theater-going public and to that end have employed and posted in the lobbies and at the entrances of complainant's theaters, certain persons whose names are unknown to the complainant as pickets and directed such pickets to wear and display signs so worded as to convey to the theater-going public the impression that complainant has refused to employ union operators in its theater business, that the wording on the placards worn by said pickets was changed from time to time so as always to convey a derogatory and opprobrious

meaning and to injure the good-will which complainant had built up .and to instill in the minds of the patrons of complainant's theater the fear that unseemly and unpleasant incidents may occur in the lobbies and inside of said theaters, to the effect that complainant's patronage has been seriously impaired and reduced to the injury of complainant.

It is further alleged that for the purpose of injuring complainant in its business, defendants have by their agents, as pickets, displayed signs to the effect that complainant's admission charges were excessive, that complainant should not charge exceeding twenty-five cents admission for the type of entertainment furnished, that by reason of labor disturbances elsewhere, the newspaper notoriety given such incidents, including the explosion of bombs and the letting loose of snakes and reptiles in theaters, the theater-going public and patronage of complainant has become nervous, its theater attendance has suffered a marked decline all to the serious and irreparable injury of complainant, wholly without justification, in fact and without provocation on the part of complainant.

The application for temporary restraining order was heard on supporting and counter affidavits. The counter affidavit of appellee, Roy W. Mitchell, admitted in part the allegations of the bill of complaint. It further alleged that in most instances where pickets were used, only one was used, that in no instance was coercion, force, or intimidation resorted to, that such picketing as it did was wholly as a retaliatory measure in retaliation of complainant first picketing defendant's theaters, that as a rule, defendant is opposed to picketing, that defendant nor any of its members have entered into any kind of conspiracy to injure complainant or its business, that at no time did defendant or any of its pickets enter the lobbies of complainant's theaters, and that for days prior

to bringing this suit and before notice thereof, defendants ceased picketing any of complainant's theaters, and that it is not now picketing any of them.

One's business is recognized as property. Both are protected by due process of law and it is as reprehensible to destroy or injure one as it is the other. This postulate does not overlook the fact that one business may be located adjacent to or in the vicinity of another and by fair competition the former may cripple the latter and ultimately drive it out of business, but such damage as may be sustained in damnum absque injuria, as fair and free competition is encouraged both by public policy and the law. This is very different from destruction by malicious mischief. No man or set of men with mere personal interests to serve and no legitimate interest to protect, may, by malicious means, destroy the business of another. To congregate about the entrance of one's place of business and there use force, malice, or coercion to drive away its patronage or discredit its business is not free competition and is a form of malevolence that may be legally repressed.

Picketing is relative. A set of facts that would constitute picketing in one community might be far from doing so in another. Picketing on the part of a blacksmith's apprentice or an automobile mechanic in an isolated community would excite little interest or comment but in highly industrialized communities where every trade, business, or profession is supported wholly or in part by these industries, their influence so permeates the social and economic structure that public sentiment becomes very sensitive to the causes and tension arising from an industrial dispute. Under such circumstances picketing is often fraught with disastrous consequences and should not be permitted to continue.

In Begelahn vs. Guntner et al., supra, it was held that

combinations among persons to regulate their own conduct was within allowable competition and lawful although others may be indirectly affected thereby, but a combination to do injurious acts expressly directed to another, by way of intimidation or constraint either of himself or of other persons employed or seeking to be employed by him, is outside of allowable competition and is unlawful.

Personal liberty and private property are fundamental rights in this country. The very purpose of law is to protect these rights. Any unlawful interference with them by false statement, acts of coercion, intimidation, malice, or covert implications that threaten mischief or injury to them may be enjoined.

In the case at bar, appeal was taken from a decree denying a temporary restraining order, the denial of which being a matter largely in the discretion of the Chancellor. When the trial court on conflicting pleadings and affidavits denies a temporary restraining order, this Court on appeal from such an order will assume a state of facts as favorable to the defendants as the showing made by them will sustain. Steffes v. Motion Picture Machine Operators Union, supra. If proven the allegations of the bill would warrant relief, but on the showing made by the bill and affidavits we cannot say that the Chancellor abused his discretion; so the decree appealed from is affirmed.

Affirmed.

WHITFIELD, P.J., AND DAVIS, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.