430 P.2d 689

Corey WINTHER and Ellen Winther, husband and wife, Plaintiffs-Respondents,

v.

VILLAGE OF WEIPPE, a municipal corporation of the State of Idaho, W. H. Durant, Chairman; and Jess Johnstun, Louis E. Snyder, Robert D. Sharp, and Elwin L. Hutchins, members of the Board of Trustees of the Village of Weippe, a municipal corporation of the State of Idaho, Defendants-Appellants.

No. 9933.

Supreme Court of Idaho.

July 31, 1967.

Ware, Stellmon & O'Connell, Lewiston, for appellants.

Jerry V. Smith, Lewiston, for respondents.

SMITH, Justice.

Respondents (plaintiffs), by this declaratory judgment action, seek to have adjudged invalid as to them Ordinance No. 8, enacted February 26, 1965, by the village of Weippe, the ordinance reading,

"Not more than two (2) premises shall be licensed for the retail sale of beer for consumption on the premises within the limits of the Village."

The trial court entered judgment adjudging the ordinance to be unconstitutional and void in its application to respondents, "as a deprivation of the property of the plaintiffs [respondents] without due process of law, and as an unreasonable exercise of police power of the Village of Weippe"; also adjudging that respondents, as of January 13, 1965, were entitled to issuance to them of a village license for the sale of beer at retail upon their premises known as the Lucky Inn situate in the village, and requiring appellants to issue such a license upon payment of the requisite fees; also adjudging that respondents' entitlement to such license was not affected by the enactment of village Ordinance No. 8. Appellants have appealed from such judgment.

Respondents' property, the Lucky Inn, the subject of this action, situate within the corporate limits of the village of Weippe, was licensed for the retail sale of beer by Clearwater County and operated by respondents continuously since 1942 until the year 1964 when they sold the Inn to James Griner under a sale and purchase contract. Mr. Griner obtained a beer license from Clearwater County for the year 1964 covering the premises. Mr. Griner however, defaulted under his contract, making it necessary for respondents to repossess the Inn, whereupon they attempted to restore their enterprise.

January 13, 1965, respondents applied for a Clearwater County license for the retail sale of beer covering the premises of Lucky Inn. Ten days later the county approved such application, the license to be delivered upon issuance of a beer license by the village.

The village of Weippe became incorporated as a village December 1, 1964. December 16, 1964, the village enacted its Ordinance No. 3 requiring a municipal license for retail beer sales within the village. January 13, 1965, respondents made due application to the village for a retail beer license for consumption of beer on the premises of the Lucky Inn. Subsequently, the owners of two other premises in the village —the Logger's Lodge and the Elk Horn Lodge—applied for and obtained during the month of January, village licenses for the retail sale of beer on the premises.

February 4, 1965, the village, through its clerk, notified respondents' attorney by letter that respondents' beer license application was denied, and returned respondents' proffered license fee. The letter did not contain a statement of the grounds of denial, as required in a licensing authority's determination to refuse issuance of a license. I.C. §§ 23–1044, 1042, 1038.

February 26, 1965, the village enacted its Ordinance No. 8, hereinbefore referred to, allowing the licensing within the village of only two premises.

Finally, May 5, 1965, respondents received a letter from the chairman of the board of trustees of the village, denying respondents' application. The letter informed respondents:

"* * * that your application must be denied for the following reasons: (1) The premises to be licensed do not meet minimum health and safety requirements; (2) There has not been a beer license issued by Clearwater County, Idaho, for the premises for which your application for a Village license was made; (3) Ordinance No. 8 of the Ordinances of the Village of Weippe provides that there shall be issued no more than two (2) licenses for the sale of beer within the Village and there are presently two such licenses issued. * * *"

Respondents shortly thereafter commenced this declaratory judgment action.

Appellants preliminarily challenge respondents' right to proceed by way of a declaratory judgment action, asserting that Idaho Code, Tit. 23, ch. 10, provides for judicial review of a municipal licensing authority's denial of a beer license. Appellants argue that respondents' action is in

the nature of a proceeding to contest the village's denial of respondents' license application, and that any such action must conform strictly to the statutory procedures of Title 23, particularly the procedure for review by the district court of the village's determination of denial of the license application. Appellants contend in effect Title 23 provides the exclusive and only remedy which may have been available to respondents.

■ Respondents point to I.C. § 10–1202 contained in the Uniform Declaratory Judgment Act, as authorizing their action at bar, which reads:

"Any person * * * whose rights, status or other legal relations are affected by a statute, *municipal ordinance*, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, *ordinance*, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." (Emphasis supplied)

I.R.C.P. 57 also contains the following provision:

"* * * The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. * * *"

Thus, although the allegations of the pleadings may indicate that an alternative statutory or common law action may lie, the trial court should not dismiss a declaratory judgment action on that ground alone. Temperance Insurance Exchange v. Carver, 83 Idaho 487, 365 P.2d 824 (1961); 3 Barron & Holtzoff, Federal Practice and Procedure (Rev. ed. 1958) § 1266.

The Uniform Declaratory Judgment Act which includes I.C. § 10–1202, was enacted by the 1933 Legislature, S.L.1933, ch. 70. I.C., Tit. 23, ch. 10, regulating the sale of beer was originally enacted by the 1935 Legislature, S.L.1935, ch. 132, although the present procedure under the act providing for review by the district court, I.C. § 23–1039, and providing appeal to the Supreme

Court, I.C. § 23–1045, was enacted by the 1961 Legislature, S.L.1961, ch. 299.

■ The later specific legislation, providing for appellate review of a determination of denial of an application for a beer license, in nowise expressly or impliedly abrogated the theretofore existing general remedy afforded by the Uniform Declaratory Judgment Act. Nor does appellant contend that the later legislation abrogated the former legislation.

50 Am.Jur., Statutes, § 597, which discusses the principles here under consideration announces the following well supported rule:

"* * * where different remedies are provided by a special act and an earlier general act, if the remedy provided by the later act is not incompatible with the remedy provided by the earlier general law, both acts may stand."

■ We therefore hold that the appellate remedies afforded by I.C. §§ 23–1039 and 23–1045 are not exclusive and that appellant properly pursued the remedy provided by I.C. § 10–1202.

■ Moreover, the district court, being a court of general jurisdiction, Idaho Const., Art. 5, § 20, had jurisdiction to dispose of all the relevant issues in this action wherein respondents contested the validity of the village's Ordinance No. 8. As a corollary, if the ordinance is unconstitutional in its application to respondents, then it follows that the district court correctly adjudged respondents to be entitled to the issuance of the beer license by the village.

The crux of respondents' action is the challenge that Ordinance No. 8, which restricts the number of retail beer licenses within the village of Weippe, is unconstitutional in its application to respondents in that it would prevent the issuance of a license to them.

■ It is recognized that Ordinance No. 8 limiting the number of beer licenses within the village bears a reasonable relation to the public health, morals, safety and general welfare—the legitimate objects of the

state's police powers—in that the regulation of the sale and consumption of liquor or beer is within the ambit of permissible state action; and such regulation reasonably comprehends a limitation on the number of retail outlets for alcoholic beverages. See, e. g., Oak Park National Bank v. Village of Broadview, 27 Ill.2d 151, 188 N.E.2d 679 (1963); Allen v. Nebraska Liquor Control Commission, 179 Neb. 767, 140 N.W.2d 413 (1966); Ketner v. Clabo, 189 Tenn. 260, 225 S.W.2d 54 (1949); Anno. 124 A.L.R. 825 (1940); Anno. 163 A.L.R. 581 (1946). See also cases cited in Gartland v. Talbott, 72 Idaho 125, 130, 237 P.2d 1067, 1070 (1951). In Gartland v. Talbott, supra, this court, in ruling upon the validity of a county limitation upon the number of retail beer licenses for the area known as Lewiston Orchards, said:

> "A limitation on the number of licenses which will be issued for the sale of intoxicants within a municipality or within a given area is not of itself prohibitory, and is recognized as a legitimate regulation tending to promote public health, safety and welfare within the police power." 72 Idaho at 130, 237 P.2d at 1070.

Respondents contend however, that Ordinance No. 8, by effectively prohibiting the retail sale of beer at the Lucky Inn, deprives them of their property rights without due process, in violation of the United States Constitution, Fourteenth Amendment, and the Idaho Constitution, Art. I, §§ 13 and 14.

Respondents place reliance upon the "grandfather" status of their business—Lucky Inn—which engaged in the retail sale of beer on the premises, and on their operation of the Inn, from 1942 to 1963 under Clearwater County licenses; also upon the right of Griner, respondents' contract purchaser of the Inn, to engaged in and operate such business during 1964 under county license; and also upon respondents' right so to engage in and operate such business for the year 1965, as recognized by the county's approval shortly after January 13, 1965, of their application for a county li-

cense, and prior to the village's enactment of Ordinance No. 8 on February 26, 1965.

Appellants on the other hand assign error committed by the trial court in adjudging that the village's Ordinance No. 8 is unconstitutional and void as to respondents.

In approaching the issue thus presented appellants contend that the trial court erred in concluding that respondents had an "existing" business, the continuation of which was prohibited by Ordinance No. 8, and in adjudging that respondents had a "preexisting" business.

Appellants' contention appears grounded upon the fact that Griner, the contract purchaser, although in possession of the Lucky Inn during 1964 and holding a county beer license covering those premises, did not operate the business during that year.

Respondents had operated the Lucky Inn continuously since 1942 until in 1963 when they contracted to sell "the property and business" to Griner. The evidence thus shows that respondents contracted to sell their business conducted as the Lucky Inn, being the premises which they used and operated for many years for the retail sale of beer. The fact that they repossessed the same shows that they owned sufficient equity therein for such purpose. Respondents subsequent conduct in applying for village and county beer licenses, by January 13, 1965, shows that respondents desired to continue to use the premises as theretofore and to continue to operate their preexisting business of the Lucky Inn, for the retail sale of beer on the premises. It was the use of the premises as the Lucky Inn for the retail sale of beer, and the operation of the same as a business, which respondents contracted to sell and which they repossessed; they sought only to continue so to use and operate their premises as they had for many years; and they made prompt application to the newly incorporated village for a 1965 village beer license for their business. Sometime later, on January 23 and 29, 1965, the village issued two beer licenses to two other applicants therefor, and later denied respondents' application,

after having enacted Ordinance No. 8 on February 26, 1965.

In Bilbao v. Krettinger, 92 Idaho 69, 415 P.2d 712 (1966) the facts showed that upon expiration of a lease whereby the Owyhee Tavern was leased by the plaintiff-owners for the retail sale of beer and liquor, the defendant-lessees, at the expiration of the term, vacated the premises, moved across the street, applied for a "renewal" of the liquor license and received a license in their own names for use covering their new establishment. The court adjudged that the plaintiffs were entitled to a reformation of the original lease agreement to show that upon expiration of the term, the license should remain an asset of the Owyhee Tavern.

Here the conduct of respondents clearly shows that they intended that any beer license issued, covering the Lucky Inn during Griner's possession under the contract of sale and purchase was intended to be a renewal of the one theretofore exercised by respondents covering the premises, the same in any event to remain an asset of the Lucky Inn.

A case similar to the one at bar is O'Connor v. City of Moscow, 69 Idaho 37, 202 P.2d 401, 9 A.L.R.2d 1031 (1949). In that case the city enacted an ordinance designed to eliminate beer parlors from a given area within the city, and as a means for furthering this policy provided that a change in ownership of an existing business would be a "new or additional business" and therefore prohibited within the area.

This court, in holding in the O'Connor case that the right to operate a business is property, said:

"Property has been well defined in Spann v. Dallas, 111 Tex. 350, 235 S.W. 513, 514, 19 A.L.R. 1387, as follows:

" 'Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal. Anything which destroys any of these elements of property, to that extent destroys the property itself. The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right.'

"See also, State v. Cowen, 231 Iowa 1117, 3 N.W.2d 176, 180; McQuillin on Municipal Corp., revised Vol. 3, Sec. 1045, page 497. A right to conduct a business, together with the incidental right to the good will thereof, is property. Robison v. Hotel & Restaurant Employees, Local No. 782 of Boise, 35 Idaho 418, 207 P. 132, 27 A.L.R. 642.

"The right to use one's property in a lawful manner is within the protection of subdivision (1) of the 14th Amendment of the Constitution of the United States and Article I, Sec. 13 of the Idaho Constitution providing that no person shall be deprived of life, liberty, or property without due process of law. State v. Kouni, 58 Idaho 493, 76 P.2d 917." 69 Idaho 42–43, 202 P.2d 404.

The effect of Ordinance No. 8 is to deprive respondents from operating a lawful business which they or their vendees had operated for over twenty years. This court's further observations in the O'Connor case are equally apropos in the case at bar, as follows:

"While a license to operate a beer parlor or a billiard or pool hall does not confer any vested property right, yet if the city makes such businesses lawful by a permit or license, it cannot arbitrarily, capriciously, or unreasonably impair, interfere with, or eradicate the same. For this principle, see Yellow Cab Taxi Service v. Twin Falls, 68 Idaho 145, 190 P.2d 681.

"This court in Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, at page 106, 286 P. 353, at page 358, has said that where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then an ordinance passed in pursuance thereof must be a reasonable exercise of the pow-

er, or will be pronounced invalid; that in determining the question of the reasonableness or unreasonableness of such an ordinance, all the existing circumstances or contemporaneous conditions, the object sought to be obtained, and the necessity or lack thereof for its adoption, will be considered by the court; that whether or not an ordinance is reasonable is a question of law for the Court." 69 Idaho 44, 202 P.2d 405.

See also Weller v. Hopper, 85 Idaho 386, 392, 379 P.2d 792, 795 (1963) wherein the O'Connor case was quoted with approval.

■■■ Barth v. De Coursey, 69 Idaho 469, 207 P.2d 1165 (1949) states the following general rule:

"It is the general rule that where authority to license and regulate a business is granted by the legislature to a municipality, the regulations adopted must not be unreasonable, unjust or unduly oppressive. [Citation] Nor must such regulations be such as to be prohibitory. [Citation]" 69 Idaho 472, 207 P.2d 1167.

■■■ While a municipal ordinance is presumed to be valid, Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, 286 P. 353 (1930); Boise City v. Better Homes, 72 Idaho 441, 243 P.2d 303 (1952); City of Lewiston v. Mathewson, 78 Idaho 347, 303 P.2d 680 (1956); White v. City of Twin Falls, 81 Idaho 176, 338 P.2d 778 (1959), whether it is reasonable and not arbitrary or discriminatory is a question of law for determination by the court. O'Connor v. City of Moscow, supra; Jackman v. Ham-

ersley, 72 Idaho 301, 240 P.2d 829 (1952); City of Lewiston v. Mathewson, supra; White v. City of Twin Falls, supra.

The facts in the instant case are indicative of a plan or scheme designed to eliminate respondents' business under color of municipal authority attempted to be exercised not only retroactively, but in an unreasonable, arbitrary and discriminatory manner. To permit this would be a departure from fundamental concepts of constitutional law as well as repugnant to the basic principles of "fair play," contrary to the United States Constitution, Fourteenth Amendment, and Idaho's Constitution, Art. I, § 13, guaranteeing due process of law. See 16 Am.Jur.2d Constitutional Law, Sec. 416, for a discussion of those principles, well supported by authority, as follows:

"If a retrespective act which is neither an ex post facto law nor one impairing the obligation of a contract should nevertheless operate so as to take away a right of property, it may still be unconstitutional and void, not because it is retrospective, but by reason of its repugnancy to the Fourteenth Amendment of the Federal Constitution guaranteeing due process of law. Retrospective legislation is prohibited under the Fourteenth Amendment when it divests any private vested interest."

The judgment of the district court is affirmed. Costs to respondents.

McQUADE, McFADDEN and SPEAR, JJ., and DONALDSON, District Judge, concur.