Argued June 28, reversed and remanded August 20,
reconsideration denied September 20,
petition for review denied November 27, 1979

CITY OF ESTACADA,
*Respondent-cross-appellant,*
*v.*
AMERICAN SANITARY SERVICE, INC.,
*Appellant-Cross-Respondent,*
*and*
WALKER,
*Defendant,*
*v.*
CITY OF ESTACADA,
*Respondent-Cross-Appellant,*
*and*
COUNTY OF CLACKAMAS,
*Defendant.*
(No. 77-2-89, CA 11871)
599 P2d 1185

John M. Berman, Portland, argued the cause for appellant American Sanitary Service, Inc. With him on the briefs were Harold C. Pope, Craig E. Iverson, and Dezendorf, Spears, Lubersky & Campbell, Portland.

Paul D. Schultz, Oregon City, argued the cause for respondent City of Estacada. With him on the brief was Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

This is a declaratory judgment action. American Sanitary Service ("Sanitary") has a franchise from Clackamas County ("county") to perform solid waste collection service in unincorporated areas. Walker has a franchise from the city to perform solid waste collection service within the city's boundaries. After the city annexed part of Sanitary's area, Walker claimed the right to serve that area. The city initiated this action, asking for a declaration that Sanitary "has no vested property right or legally protected interest in the continuance of its service to areas encompassed in its county franchise which have been annexed ***."[1] Sanitary counterclaimed for damages based on a taking by the city.

After a trial to the court, a letter opinion issued containing findings that Sanitary had "a vested property interest" in the annexed area, that a taking had occurred and that Sanitary was entitled to damages in a certain amount. In response the city objected that it had not yet decided to exclude Sanitary from serving the area. The decree thereafter made provided, in part:

"1. Upon legal annexation of the subject territory by the City of Estacada, the City took the territory subject to the Clackamas County franchise granted to American Sanitary Service, Inc.

"2. The City of Estacada may cancel that franchise, but if it does so, it must compensate American Sanitary Service under Article I, Section 18 of the Oregon Constitution."

Sanitary filed a cost bill which included a claim for attorney's fees. The city objected, and the court advised by letter "that when and if there is a taking by the plaintiff that the plaintiff shall not only pay just compensation as previously indicated but shall also pay the costs incurred, including attorney's fees ***." Sanitary appeals, and the city cross-appeals.

---

[1] Sanitary filed a third party claim against Clackamas County, to which a demurrer was sustained. That matter is not in issue.

We will deal only with the city's contention that the trial court erred in determining that Sanitary's franchise rights would compel the city to pay compensation in the event it chooses to apply its own franchise ordinance in the annexed territory and exlude Sanitary. We agree that the court erred and we reverse.

The 1969 legislature authorized counties to:

"(1) Prescribe by ordinance:

"(a) The quality and character of and rates for service provided to any area outside of an incorporated city;

"(b) Franchise service within service areas established by the county court;

"(c) Prescribe and collect a franchise fee from those providing service to service areas;

"(d) Establish minimum requirements to guarantee maintenance of service; or

"(e) Exclude or reject any person providing or proposing to provide service to any service area within the county.

"(2) Require that the person providing service make modifications, additions or extensions to his physical equipment, facilities, plant or service within service areas as shall be reasonable and necessary in the interest of the public.

"(3) Enter into any agreement which the county court determines is desirable with any city or county for joint or regional franchising of service." Or Laws 1969, ch 90, § 3.

Sanitary's franchise was granted under a 1970 ordinance enacted pursuant to that authority. The 1969 law was repealed in 1971 (Or Laws 1971, ch 648, § 33) after the franchise was granted. Walker's franchise was granted under a 1974 city ordinance. The annexation took place in 1976.

The county's ordinance, entitled Solid Waste Collection and Disposal Ordinance, was passed, according to its "Foreword" in recognition of "the mounting pressures and problems of solid waste control" and reflected a determination that the county "would be in a

[540]

better position to demand high operating and service standards in return for franchise protection both in the collection and disposal areas." Although it contained prohibitions against and provisions for abatement of solid waste accumulation nuisances and created an advisory "Waste and Solid Waste Commission," by far the greater part of the ordinance is devoted to the various aspects of franchising collection and disposal. It is not applicable "within the incorporated limits of any city" except where there is an agreement for joint or regional franchising. Section 4.02. Once granted under section 9.04, a collection franchise is subject to such requirements as might be imposed governing:

"(1) The quality and character of service provided by any person or to any area outside of an unincorporated city.

"(2) Rates for service.

"(3) Minimum requirements to guarantee service."

Furthermore, the ordinance contains express provisions encompassing "Responsibility of Franchise Holders" (section 9.010), "Enforcement of Franchise Provisions" (section 9.11), "Suspension, Modification, Revocation, or Refusal to Review a Franchise" (section 9.12), "Preventing Interruption of Service" (section 9.13), "Term of Franchise" (section 9.14), "Franchise Fees" (section 9.15), "Rates and Charges for Collection and Disposal Service" (Article VI) and "Enforcement and Penalties" (Article VIII).

When Sanitary obtained its franchise, it was expressly subject to the terms of the ordinance as well as regulations that might be adopted. The county was given statutory power over waste collection only "outside of an incorporated city," and any franchise granted was implicitly subject to the condition that it would only be exercisable in those areas in which the county had the power to grant, protect and regulate the franchise. To hold that the franchise survived in territory in which the ordinance could not operate

[541]

would be to remove all of the limiting conditions which attached to it at the creation and leave the possessor with the right to serve the area without being restricted in the way the county ordinance (as well as the state enabling statute) meant it to be restricted and conditioned.[2]

Although none of the authorities urged upon us by the parties or discovered by us are squarely in point, the cases do seem to point towards support for Sanitary's position. The nearest on the facts is *Calcasieu Sanitation Service v. City of Lake Charles*, 118 So 2d 179 (La 1st Cir 1960). The city had extended its "free" refuse collection service into a newly annexed territory which had been served previously by a parish-franchised private company. Because the city had not directly excluded the private company, but had offered a competing service without charge, the court avoided the issue presented in the present case, even though the parish franchise by its terms was "exclusive" and the parish presumably could not itself have entered into direct competition with its franchisee. The court commented, however: "Perhaps a different question would be involved if the city actually hindered the plaintiff by prohibitory ordinance or discriminatory licensing from continuing to afford garbage-disposal * **." 118 So 2d at 181. Subsequently another division of the Louisiana Court of Appeals in *Town of Coushatta v. Valley Electric Member. Corp.*, 139 So 2d 822 (2d Cir 1962), held that a pre-existing electric utility franchise was protected against a city-granted franchise, but the opinion left unclear whether that result depended upon the original franchise's being a state-granted one.

The fact that an electric utility had a state franchise, and would therefore be subject to the same

---

[2] The regulation of waste collection and hauling is an exercise of the police power in a home rule city. *Spencer et al v. City of Medford et al*, 129 Or 333, 276 P 1114 (1929); *see also Schmidt v. Masters*, 7 Or App 421, 490 P2d 1029 (1971). Were Sanitary to operate in the city without a city franchise, it seems clear that it could be compelled to comply with the city's regulations. *Spencer et al v. City of Medford et al, supra.*

[542]

regulations over its operations after the annexation as it was before, was in part at least the apparent basis for the holding in *Town of Culpeper v. Virginia Electric and Power Co.*, 215 Va 189, 207 SE 2d 864 (1974), that neither the state constitution nor statutes gave a city the power to override a pre-annexation franchise. *See also People v. Blocki*, 203 Ill 363, 67 NE 809 (1903), and *City of Jackson v. Creston Hills, Inc.*, 252 Miss 564, 172 So 2d 215 (1965), where the state-created character of the franchise grants was held to protect them from being affected by annexation. The Idaho Supreme Court, in *Unity Light and Power Co. v. City of Burley*, 92 Id 499, 445 P2d 720 (1968), arrived at a compromise by holding that the city could not "pirate" the state-created franchisee's customers in the annexed area for its own utility operation, but the city could refuse to allow the franchisee to expand its service to new customers in the area. While that solution has a certain facial attractiveness, it is difficult to discern the operating principle being applied, for the result was to amend judicially the terms of the very franchise being protected. The opinion rests on the concept that the franchise was both a valuable property and was subject to the same degree of regulation by the state after annexation as it was before.

We do not have before us a franchise created by a higher authority than the city. Nor do we have a situation where the city is directly or indirectly taking tangible assets of the franchisee for a public use. The city will acquire nothing from the franchisee. Instead, this is a situation where a regulated franchisee claims the rights to continue to do business in an area as to which one of the parties to the original franchise contract no longer has any authority and to do that business without the restrictions which were part and parcel of its very creation. In those circumstances we do not believe the city may be prevented from exercising its own power without first paying off the value of the county-created franchise. The trial court erred in

[543]

holding that a failure by the city to honor the county franchise would be a taking within the meaning of Article I, section 18 of the Oregon Constitution.

Reversed and remanded.