DAVID E. STILLINGS, AND FRANCIS D. SAWYER, A NORTH CAROLINA PARTNER-SHIP DOING BUSINESS AS "COMMUNITY GARBAGE SERVICE" v. THE CITY OF WINSTON-SALEM, NORTH CAROLINA, A MUNICIPAL BODY CORPORATE

CLYDE H. WHITMAN, JR., DOING BUSINESS AS "SOUTH FORK SANITARY SERVICE," A SOLE PROPRIETORSHIP v. THE CITY OF WINSTON-SALEM, NORTH CAROLINA, A MUNICIPAL BODY CORPORATE

LARRY K. TUTTLE, DOING BUSINESS AS "FORSYTH GARBAGE AND CONTAINER SERV-ICE," A SOLE PROPRIETORSHIP v. THE CITY OF WINSTON-SALEM, NORTH CAROLINA, A MUNICIPAL BODY CORPORATE

No. 8221SC315

(Filed 6 September 1983)

Eminent Domain § 2; Municipal Corporations § 23— franchises for waste disposal—municipality extending waste disposal services to areas—inverse condemnation

> Defendant city's extension of waste disposal services into a newly an-nexed area previously served by plaintiffs under an exclusive franchise granted by the county pursuant to a county ordinance so impaired the value of plaintiffs' franchises as to amount to a taking thereof for which plaintiffs are entitled to just compensation.

APPEAL by plaintiffs from *Helms, Judge.* Judgment entered 15 December 1981 in Superior Court, FORSYTH County. Heard in the Court of Appeals 10 February 1983.

In this civil action plaintiffs seek to recover compensation and damages for losses sustained by them allegedly resulting from certain acts by defendant.

At the time of the acts giving rise to this controversy, plain-tiffs were each operating solid waste disposal services in Forsyth County. Each plaintiff operated his service under a franchise granted to him by the Forsyth County Commissioners under an ordinance. The franchises became effective 1 January 1979 and were to last for five years. The ordinance granting the franchises was enacted pursuant to G.S. 153A-136(a)(3), which specifically gives counties the authority to regulate solid waste disposal. The ordinance set out the specific areas to be served by the individual franchisee and set forth the following pertinent terms and condi-tions:

Section 2. *Franchise Areas*

The residential and small business franchise holders as set forth in Section 1 above are hereby granted franchises for the areas set forth in Section 1 of this ordinance and set forth in the attached documents entitled "Map of Franchise Areas," dated April, 1978, and "Description of Residential and Small Business Service Franchise Areas," consisting of fifteen (15) pages and dated July, 1978, both of which are adopted and incorporated herein by reference. . . .

Section 3. *Nature of Franchises*

The franchises for residential and small business service granted shall be and are hereby adopted as exclusive franchises within the respective areas designated. . . .

Section 4. *Period of Franchises*

The franchises for the collection and transportation of solid waste are hereby granted for a period of five (5) years beginning January 1, 1979, and ending December 31, 1983.

Section 5. *Establishment of Maximum Fees or Charges for Certain Residential Collection and Transportation and Required Services*

There is hereby established and imposed a maximum collection and transportation fee or charge for residential service, meaning once per week pickup of stored solid waste not exceeding two containers or cans each of a capacity of thirty-two (32) gallons or less, of five dollars ($5.00) per household per month. Fees or charges for additional or special services other than as specified herein may be agreed upon by the parties, subject to review and approval by the Board of Commissioners as to reasonableness if it deems advisable.

Section 6. *Required Service*

Within the franchise area, the franchise holder must provide service to everyone who requests it for domestic and household and small business solid waste disposal and related additional or special services. The Board of Commissioners may from time to time require residential and small business franchise holders to provide special programs of solid waste collection sponsored and paid for by the County.

On 17 December 1979, the Board of Aldermen of defendant City of Winston-Salem adopted ordinances extending the corporate limits of the city and annexing five adjacent areas of Forsyth County. The five areas annexed were coextensive to varying degrees with the areas served by appellants under their franchises. This annexation ordinance survived challenges by the residents of the annexed areas, its validity finally being upheld by our Supreme Court, *In re Annexation Ordinance*, 303 N.C. 220, 278 S.E. 2d 224 (1981), and became effective on 22 June 1981. On that date, the city began providing residential garbage pickup, without charge, to the residents of the annexed areas on the same basis as it was provided to all residents of the city. Plaintiffs' franchises were not honored and plaintiffs received no payment from the city. Each plaintiff lost some of his business as a result of this extension of waste disposal services by the city.

Plaintiffs initiated this action on 11 September 1981, alleging their losses and the actions of the city which allegedly caused the losses. Plaintiffs asked the court to find that the city's actions amounted to a violation of their rights under the franchises or, in the alternative, that they constituted a taking of plaintiffs' property without due process of law or just compensation. Plaintiffs sought damages or compensation in the amount of their economic losses.

Defendant city answered on 5 October 1981, admitting its actions but denying any liability for plaintiffs' economic loss under either of the theories advanced. Defendant at the same time filed motions for summary judgment in each case. On 6 November 1981, plaintiffs filed cross-motions for summary judgment. A hearing on the motions was held on 16 November 1981. From an order entered 15 December 1981, awarding summary judgment to defendant and denying plaintiffs' motions, plaintiffs appealed.

*Pfefferkorn and Cooley, by Jim D. Cooley, for plaintiff appellants.*

*Womble, Carlyle, Sandridge and Rice, by Roddey M. Ligon and Ronald G. Seeber and Ralph D. Karpinos, for defendant appellee.*

JOHNSON, Judge.

Plaintiffs argue that the provision by the city of waste disposal service in the annexed areas where plaintiffs had previously operated under their franchises from the county constitutes an expropriation of their property. Plaintiffs argue that their rights under the franchises are property rights protected under the Constitutions of the United States and North Carolina and that the effective partial termination of their franchises by the city was an interference with those property rights amounting to a taking for which plaintiffs are entitled to compensation.

There is no question that the facts before us present a case of first impression in this jurisdiction. The legal principles that govern its disposition, however, are well recognized in our state and national jurisprudence. The United States Supreme Court has long held rights under a franchise to be property rights and has long held that the holders of those rights are entitled to the Fifth Amendment protections of due process and just compensation. *Owensboro v. Cumberland Telephone & Telegraph Co.*, 230 U.S. 58, 57 L.Ed. 1389, 33 S.Ct. 988 (1913); *Boise Artesian H. & C. Water Co. v. Boise City*, 230 U.S. 84, 57 L.Ed. 1400, 33 S.Ct. 997 (1913); *see generally*, 36 Am. Jur. 2d, Franchises, § 5. Similarly, North Carolina courts have recognized such rights and accorded them appropriate protection under the State constitution.[1] *Boyce v. Gastonia*, 227 N.C. 139, 41 S.E. 2d 355 (1947); *Shaw v. Asheville*, 269 N.C. 90, 152 S.E. 2d 139 (1967).

Therefore, defendant's reliance on the case of *City of Estacada v. American Sanitary Service*, 41 Ore. App. 537, 599 P. 2d 1185, *rev. denied*, 288 Ore. 141 (1979), which holds to the contrary, is misplaced. In that case, similar in all essential respects with the present one, the Oregon Court of Appeals held that interference with franchise results in no compensable taking. The court's holding was based at least in part on its finding that the situation involved no direct or indirect taking of "tangible assets"

---

1. North Carolina is the only state in the nation that does not have an express constitutional provision against the "taking" or "damaging" of private property for public use without compensation. Nevertheless, the principle is recognized as a fundamental right and is considered an integral part of the "law of the land" within the meaning of Article 1, Section 19 of the Constitution of North Carolina. *Long v. City of Charlotte*, 306 N.C. 187, 293 S.E. 2d 101 (1982).

for a public purpose. *Id.* at 543, 599 P. 2d at 1188. Clearly, that rationale conflicts with the established rule in this state and we reject it. A franchise is property in all respects necessary for its protection under the Constitutions of the United States and North Carolina. The owner of a franchise or a person claiming rights thereunder has the same expectations for the protection of his interest as has the owner of any other property. Accordingly, the same remedies are available to him when his interest is impaired by governmental action. *Louisville v. Cumberland Telephone and Telegraph Co.*, 224 U.S. 649, 56 L.Ed. 934, 32 S.Ct. 572 (1912).

Defendant city does not contend that plaintiffs' franchises are not property or that their rights under the franchises are not property rights. Rather, the city argues that its extension of waste disposal services into the annexed areas was a lawful exercise of its governmental powers and that it is not liable for the economic consequences thereof.

The city first argues that rights conferred under any franchise granted by the county are inherently subject to the statutory limitations of the county's territorial jurisdiction. In support of this contention, defendant cites the following statutory provision:

Except as otherwise provided in this Article, the board of commissioners may make any ordinance adopted pursuant to this Article applicable to any part of the county not within a city. In addition, the governing board of a city may by resolution permit a county ordinance adopted pursuant to this Article to be applicable within the city. The city may by resolution withdraw its permission to such an ordinance. If it does so, the city shall give written notice to the county of its withdrawal of permission; 30 days after the day the county receives this notice the county ordinance ceases to be applicable within the city.

G.S. 153A-122. Defendant argues that the logical extension of this statutory limitation is that any county ordinance is inherently subject to prospective limitations in territorial application due to the possibility of future municipal expansions. Therefore, defendant argues, any contractural rights conferred under a franchise granted pursuant to a county ordinance are subject to the same

prospective limitations in territorial application as is the ordinance itself.

This argument also appears in *Estacada* and the court's holding therein is obviously influenced by it.

> To hold that the franchise survived in territory in which the ordinance could not operate would be to remove all of the limiting conditions which attached to it at the creation and leave the possessor with the right to serve the area without being restricted in the way the county ordinance . . . meant it to be restricted and conditioned.

41 Ore. App. at 541-42, 599 P. 2d at 1187 (footnote omitted). While this argument is logically appealing, it is not, in our view, legally sound. Insofar as the *Estacada* decision is based on this argument, we are in disagreement with it.

G.S. 153A-122, cited by defendant and quoted above, provides for mutual exclusivity of territorial jurisdiction between city and county governments. This mutual exclusivity has been recognized by our courts as manifestly necessary to avoid confusion and disastrous conflicts of jurisdiction and authority. *Parsons v. Wright,* 223 N.C. 520, 27 S.E. 2d 534 (1943); *see also Taylor v. Bowen,* 272 N.C. 726, 158 S.E. 2d 837 (1968); *see generally,* 9 Strong's N.C. Index 3d, Municipal Corps., § 2.5 (1977).

However, these considerations of governmental efficiency do not apply as strongly to private vested rights granted by county governments and our reading of the applicable statutes dictates a conclusion contrary to that urged upon us by defendant. County governments are delegated by the state with a general police power. G.S. 153A-121. Additionally, counties are specifically vested by statute with authority to regulate by ordinance the collection and disposal of solid waste within their jurisdictions. G.S. 153A-136. In order to effect this regulatory power and meet their police power responsibilities, counties are specifically authorized by statute to enact ordinances granting exclusive franchises "to commercially collect or dispose of solid waste within all or a defined portion of the county." G.S. 153A-136(a)(3).

Any derivative power, such as a local police power, has inherent limitations. In addition to the inherent limitations, the county police power is further subject to the express jurisdic-

tional limitation set forth in G.S. 153A-122. Defendant would have us interpret these limitations in such a way that municipal expansions, in addition to pre-empting county jurisdiction over the annexed area, would also operate to extinguish private rights vested by the county in accordance with specific statutory authorization. However, the statute is silent on this point and we disagree with defendant.

The declared policy of the Legislature in delegating its governmental powers to the counties is set forth below:

> It is the policy of the General Assembly that the counties of this State should have adequate authority to exercise the powers, rights, duties, functions, privileges and immunities conferred upon them by law. To this end, the provisions of this Chapter and of local acts shall be broadly construed and grants of power shall be construed to include any powers that are reasonably expedient to the exercise of the power.

G.S. 153A-4.

This legislative mandate requires broad construction of those statutes granting power and restrictive readings of those purporting to limit the power. Defendant's expansive reading of G.S. 153A-122 is inconsistent with the broad delegation of power contemplated by the legislature. We cannot, consistent with our duty to broadly construe, accept the reading of G.S. 153A-122 urged upon us by defendant. As plaintiffs point out, such a reading would also be contrary to the weight of legal authority in the United States, *Estacada* notwithstanding. *See* 12 McQuillin, Municipal Corporations 3d, § 34.50 (1970); 37 C.J.S., Franchises, § 8; *e.g., Scenic Hills Utility Co. v. Pensacola,* 156 So. 2d 874 (Fla. App. 1963); *Belleville v. St. Clair County Turnpike Co.,* 234 Ill. 428, 84 N.E. 1049 (1908).

Moreover, the considerations of governmental efficiency urged upon us by defendant as grounds for terminating rights vested under duly ordained franchises apply with equal force in the opposite direction. It would appear to be essential to the responsible exercise of police power that those individuals and businesses vested with the responsibility of providing certain services to the residents of the county be protected to the extent that they have invested private resources in reliance on the county's continued need for their services. Were we to hold that the

vested rights of such individuals and businesses could be impaired without compensation by municipal expansion, we would remove any incentive for the type of private investment that assures the efficient provision of quality services. To so hold would significantly impair a county's negotiating position with respect to franchised services and hinder the administration of county government. Defendant's contention in this regard is, therefore, without merit.

We now consider whether the actions of the city amounted to an impairment of plaintiff's property interest such that they are entitled to compensation. We note at the outset that the act of annexation did not by itself cause the deprivation complained of. Rather, it was the extension of the city's already existing waste disposal service into the annexed areas that displaced plaintiffs. The city correctly argues that it is required by law to provide waste disposal services on "substantially the same basis and in the same manner as such services are provided within the municipality prior to annexation." G.S. 160A-47; *see also* G.S. 160A-192 (dealing with a municipality's authority to regulate garbage collection). Waste disposal is a recognized function of local government and a service consistent with governmental responsibility under the state's delegation of police power. *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897 (1972); *see also* G.S. 160A-174.

Defendant argues that the extension by it of waste disposal services into the annexed areas was an exercise of its police power necessary to provide a statutorily required governmental service. As such, defendant contends, plaintiffs are not entitled to compensation for the impairment of their franchises occasioned as a result thereof. In *Calcasieu Sanitation Service, Inc. v. City of Lake Charles*, 118 So. 2d 179 (La. App. 1960), cited by defendant along with *Estacada*, this argument regarding statutory duty appeared to influence the court's decision. In that case, factually similar to the case at bar, the court found that the plaintiff franchisee had no cause of action against the defendant city for a violation of contract rights. The court there reasoned that the city's provision of free waste disposal service, in accordance with its statutory duty, did not deprive plaintiff of its right to provide the service, only of its ability to find customers who would continue to pay for it. The *Calcasieu* court said that if the deprivation had been the result of a prohibitory ordinance or dis-

criminatory licensing, a "different question" would have been involved. 118 So. 2d at 181. This decision appears to be premised on the doctrine that distinguishes between the governmental and proprietary functions of local government and imposes different standards of liability for economic loss, depending on which function resulted in the loss.

Relying on *Calcasieu*, defendant here attempts to assert its legal obligation to provide waste disposal service in its governmental capacity as grounds for exempting it from liability for the resulting economic losses. As plaintiffs point out, however, the doctrine relied on by defendant and the *Calcasieu* court is limited to situations involving the negligence of officers or agents of the government. For purposes of liability for unconsitutional takings, the fact that a municipality is acting in its governmental capacity is of no consequence. *McKinney v. High Point*, 237 N.C. 66, 74 S.E. 2d 440 (1953).

Generally, impairment of property values as a result of an exercise of police power does not entitle the property owner to compensation where no property is actually taken. *Snow v. State Highway Commission*, 262 N.C. 169, 136 S.E. 2d 678 (1964). However, when a person's rights to the use and enjoyment of his property are interfered with by governmental regulations or ordinances to the point that the value of the property is substantially impaired, that person may be entitled to compensation on a theory of inverse condemnation. *Hoyle v. Charlotte*, 276 N.C. 292, 172 S.E. 2d 1 (1970). Our Supreme Court recently examined the doctrine of inverse condemnation.

> In order to recover for inverse condemnation, a plaintiff must show an actual interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental; a "taking" has been defined as "entering upon private property for more than a momentary period, and under warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof."

*Long v. City of Charlotte, supra,* 306 N.C. at 199, 293 S.E. 2d at 109, *quoting Penn v. Coastal Corp.*, 231 N.C. 481, 57 S.E. 2d 817 (1950).

Here, defendant has extended its waste disposal service into the annexed areas previously served by plaintiffs under an exclusive franchise granted by the county pursuant to a county ordinance. Defendant contends that its actions constitute a proper exercise of the police power. Nevertheless, defendant's actions have interfered with plaintiffs' rights under their franchises to such an extent that the franchises have been effectively vitiated with respect to the annexed areas, amounting to a taking of those rights without compensation.

Defendant contends that the theory of inverse condemnation, or taking by regulation, has been limited in its application in North Carolina to situations involving the impairment of rights in tangible property, usually real property. *See, e.g., Hoyle v. Charlotte, supra* (airplane overflight); *Guyton v. Board of Transportation,* 30 N.C. App. 87, 226 S.E. 2d 175 (1976) (access to public road); *see generally* 5 Strong's N.C. Index, Em. Dom., §§ 2, 2.3, 13 (1977 and Supp. 1982). However, while plaintiffs' franchises are neither tangible nor real property, they are nevertheless valuable property and plaintiffs' rights under those franchises are rights to the exclusive use and enjoyment thereof. Further, these franchises are so connected with the geography of the areas with respect to which they were granted that any reduction in the size of those areas necessarily entails a coextensive reduction in the size of the franchise and a consequent impairment of its value. The loss occasioned by such a reduction is irretrievable and, unlike purely economic losses, cannot be made up by simply shifting the market. Any differences between such a franchise and real or tangible property, insofar as the economic effects of a reduction in size are concerned, are merely semantic. We therefore hold, on the basis of the facts of this case, that defendant's extension of waste disposal services into the newly annexed areas previously served by plaintiffs has so impaired the value of plaintiffs' franchises as to amount to a taking thereof for which plaintiffs are entitled to just compensation.

Having thus determined this matter, we need not consider plaintiffs' remaining arguments. It was error for the trial court to deny plaintiffs' motion for summary judgment and to award summary judgment to defendant and we reverse the order appealed from.

The amount of compensation to which plaintiffs are entitled was not determined at trial. That amount is a factual matter and we remand this cause to the trial court for appropriate proceedings.

Reversed and remanded.

Judges HEDRICK and EAGLES concur.