759 P.2d 879

COEUR D'ALENE GARBAGE SERVICE, a sole proprietorship, Plaintiff–Respondent,

v.

CITY OF COEUR D'ALENE, a municipal corporation, Defendant–Appellant,

and

Lake City Disposal, Inc., an Idaho corporation, Defendant.

No. 16712.

Supreme Court of Idaho.

May 20, 1988.

Hull, Hull & Branstetter, Michael K. Branstetter, (argued), Wallace, for defendant-appellant.

Scott W. Reed, Coeur d'Alene, for plaintiff-respondent.

JOHNSON, Justice.

This is an inverse condemnation case. The primary issue presented is whether the actions of the City of Coeur d'Alene (the City) constituted takings of property of Coeur d'Alene Garbage Service (Garbage Service) requiring just compensation pursuant to art. 1, § 14 of the Idaho Constitution and the fifth amendment of the United States Constitution. We affirm the decision of the trial court that there were takings and the award of just compensation by the trial court, together with prejudgment interest from the dates of taking.

## I.

### THE FACTS

For several years prior to 1982 Garbage Service provided garbage collection service to suburban areas outside the corporate limits of the City. In 1981 the City contracted with Lake City Disposal, Inc. (Disposal) to provide garbage service for every structure in the City that was occupied. By ordinance the City prohibited collection of garbage within the limits of the City except by Disposal, and made it a crime for anyone else to attempt to provide garbage service within the City. The contract between the City and Disposal was for a fixed five-year term with a two-year option to renew. The contract also required Disposal to extend its garbage collection service to any area annexed by the City within ninety days after annexation.

Garbage Service was licensed as a hauler or collector of garbage by Panhandle Health District No. 1. This license required compliance with all state regulations for the sanitary procedures of hauling and handling garbage, but did not provide Garbage Service with a franchise to serve a particular territory. Garbage Service enjoyed a *de facto* monopoly in the areas it served outside the limits of the City.

In 1982 the City began the process of annexing some areas in which Garbage Service was operating. Before the annexation was completed Garbage Service obtained written contracts with its customers in the areas proposed for annexation. These contracts were for a period of three months with automatic renewal for additional periods of three months unless cancelled by either party by giving notice ten days prior to the expiration of each three-month term.

Following the completion of the annexation Disposal began providing garbage collection service within the annexed areas that had previously been served by Garbage Service. Garbage Service filed suit for injunctions against the City and Disposal, to obtain just compensation for the taking of property, and for damages for interference with contracts. While the suit was pending, in 1983 the City annexed other areas in which Garbage Service operated. Garbage Service sought a preliminary injunction to prevent the City and Disposal from servicing Garbage Service's customers in the areas annexed in 1983. The trial court denied the preliminary injunction. Garbage Service then filed a supplemental complaint seeking the same relief as sought in the complaint with regard to the areas encompassed in the 1983 annexation. The trial court granted partial summary judgment to Garbage Service, determining that there had been takings of Garbage Service's property by the elimination of its right to serve its customers in the areas annexed. Following a trial the trial court awarded Garbage Service $262,574 as just compensation, together with interest from the dates of taking.

The City has appealed the trial court's ruling that there were takings. The City has also raised as issues whether the trial court improperly received evidence concerning damages that was not based on fair market value, whether the trial court awarded an improper amount of just compensation, and whether prejudment interest was properly awarded.

## II.

### THE ACTIONS OF THE CITY CONSTITUTED TAKINGS REQUIRING JUST COMPENSATION

■ Both the Idaho Constitution and the United States Constitution provide that if private property is taken for public use, there must be just compensation. Id. Const., art. 1, § 14, U.S. Const., Amend. 5. We conclude that the protection of the just compensation clause of our state constitution provides a sufficient basis for our decision in this case. We refrain from premising our opinion on the just compensation clause of the fifth amendment.

Garbage Service does not question the authority of the City to annex the areas within which Garbage Service operated its business. Garbage Service contends that it was the effect of the exclusive service contract between the City and Disposal that brought about the takings of the property

of Garbage Service entitling it to just compensation. Garbage Service acknowledges that if it had been permitted to continue to serve its customers in the annexed areas, there would have been no takings. We agree.

The essence of our holding here is that the City went too far by excluding Garbage Service from continuing to service its customers in the annexed areas. Garbage Service's license from Panhandle Health District No. 1 granted it lawful authority to provide garbage collection service in the areas annexed prior to annexation. The trial court found that Garbage Service was not endangering or threatening any public health or welfare in the annexed areas. If the City had merely regulated the operation of Garbage Service in the annexed areas by requiring it to comply with reasonable standards established by the City, there would have been no taking. Instead, the City chose to take from Garbage Service any opportunity to continue to service its customers in the annexed areas. It was this exclusion that entitles Garbage Service to just compensation.

The City has disputed whether Garbage Service's business in the annexed area constituted property that is subject to the just compensation clause of art. 1, § 14. This Court has stated that private property "of all classifications" may be taken for public use under the just compensation clause. *Hughes v. State*, 80 Idaho 286, 293, 328 P.2d 397, 400 (1958). It is also established that the "right to conduct a business is property." *Robison v. H. & R.E. Local #782*, 35 Idaho 418, 429, 207 P. 132, 134 (1922). *See also, O'Connor v. City of Moscow*, 69 Idaho 37, 42–43, 202 P.2d 401, 404 (1949); and *Winther v. Village of Weippe*, 91 Idaho 798, 803, 430 P.2d 689, 694 (1967). Garbage Service had a property interest in the business it conducted in the areas annexed by the City. The City chose to take this property in order to allow Disposal to provide exclusive garbage service to the annexed areas.

We recognize that there are competing interests at issue here. The City has an interest in insuring that the garbage collection service that is provided to its residents is uniform and accomplishes the purpose of maintaining the health of those who reside in and frequent the City. The police power of the City to accomplish these objectives is broad, but not unlimited. When the exercise of the police power by the City comes in conflict with the interest of an owner in preserving a property interest, there must be a balancing of these interests. There is no showing here that the actions of the City in excluding Garbage Service from the annexed areas furthers the preservation of health in those areas. In the absence of such a showing, the balance tips in favor of the protection of Garbage Service's property interest. *Cf. Parker v. Provo City Corp.*, 543 P.2d 769 (Utah 1975) (Ordinance prohibiting private waste material collector from removing or disposing of garbage in the city declared void where there was no showing that the material collected or the method of hauling it was detrimental to the public health).

This Court has previously said in cases involving the conflict between the exercise of a city's police powers and the protection of private property that a harmful effect upon a property owner alone is insufficient to justify an action for damages. *Johnston v. Boise City*, 87 Idaho 44, 52, 390 P.2d 291, 295 (1964). In *Johnston* the Court focused on there being "a reasonable relationship to the public health, safety, moral or general welfare" in order to validate the exercise of the police power. *Id.* The Court stated:

If the exercise of the authority under such an enactment is reasonable and not arbitrary, any injury occasioned thereby must be considered a servitude inherent under our system of government, and damages from such injury must be considered as *damnum absque injuria.* [Citations omitted.] In the instances where the exercise of the authority transgresses the bounds of reasonableness, or is arbitrary in result, to the point where there is an actual taking of private property for public use, (Idaho Const., Art. 1, § 14) or to the point where there is a deprivation of property without due

process of law (Idaho Const., Art. 1, § 13), an action would lie for damages by way of inverse condemnation or of injunctive relief.

*Id.*

The Court then adopted the following formulation of the Kansas Supreme Court in *Smith v. State Highway Commission*, 185 Kan. 445, 346 P.2d 259, 268 (1959):

> Determination of whether damages are compensable under eminent domain or noncompensable under the police power depends on the relative importance of the interests affected. The court must weigh the relative interests of the public and that of the individual, so as to arrive at a just balance in order that government will not be unduly restricted in the proper exercise of its functions for the public good, while at the same time giving due effect to the policy of the eminent domain clause of insuring the individual against an *unreasonable loss* occasioned by the exercise of governmental power. (Emphasis in original.)

Here we conclude that Garbage Service suffered an unreasonable loss occasioned by the exercise of governmental power by the City in excluding Garbage Service from continuing its business in the annexed areas.

In a similar case this Court has held that once a supplier of service lawfully enters into an area to provide that service, annexation of the area by a city does not "in the absence of condemnation" authorize an ouster of the supplier from that area. *Unity Light & Power Co. v. City of Burley*, 92 Idaho 499, 502, 445 P.2d 720, 723 (1968). Implicit in the decision in *Unity* was an acknowledgment that the supplier of the service in the annexed area had a property interest in servicing its customers there. In *Unity* the trial court awarded the supplier $500 damages for taking by Burley of property rights, and enjoined Burley from interfering with the supplier's existing customers. *Id.* at 504, 445 P.2d at 725. This Court affirmed. The Court stated that "[a]mong the considerations which led to the conclusion that [the supplier] could not be ousted from the territory an-

nexed by Burley insofar as service to its members at the time of annexation is concerned, is that the legislature as early as 1903 recognized that delivery of electricity throughout the state was essential." *Id.* at 502–03, 445 P.2d at 723–24. We note a similar recognition of the importance of solid waste disposal declared by the legislature in I.C. § 31–4401.

In *Unity*, this Court held that the City of Burley had the power to condemn the supplier's property within the annexed area. *Id.* at 503, 445 P.2d at 724. Here, the City had the right of eminent domain under I.C. § 50–1030(c) for the purpose of preserving the public health as provided for in I.C. § 50–304. Although the City did not exercise its right of condemnation in this case, it did take Garbage Service's property by excluding Garbage Service from servicing its existing customers in the annexed areas.

The decision of this Court in *Renninger v. State*, 70 Idaho 170, 213 P.2d 911 (1950), disposes of the City's contention that it is immune from liability to Garbage Service by virtue of I.C. § 6–904(4). The City characterizes this suit as one for tortious conduct of the City. In *Renninger* this Court held that art. 1, § 14 of the Idaho Constitution waives the immunity of the state in an inverse condemnation case. *Id.* at 178, 213 P.2d at 916. This case is correctly characterized as one for inverse condemnation and not as one for tortious interference with contract. The City cannot avoid liability by attempting to recast what it has done.

## III.

## THERE IS EVIDENCE TO SUPPORT THE JUST COMPENSATION DETERMINATION OF THE TRIAL COURT

■ The City has challenged the trial court's determination of the amount of just compensation awarded to Garbage Service on the grounds that the trial court took into account evidence not based on the fair market value of the property taken and evidence premised on some elements of

noncompensable damages. The essence of the City's position is that the trial court did not correctly determine the fair market value of the garbage collection routes of Garbage Service that were taken because the trial court used the earnings of Garbage Service in the annexed areas to determine the amount to be awarded. In its Findings and Conclusions, the trial court premised its award of just compensation on the "present market value" of the portion Garbage Service's business that was taken by the City.

Two members of this Court sitting with a district judge, acting as the Court of Appeals, have recently stated that the standard by which an appellate court should review an award of just compensation by a trial court is whether there is evidence to support the value determination of the trial court. The amount awarded may be set aside only if it is not supported by any evidence. *Eagle Sewer Dist. v. Hormaechea*, 109 Idaho 418, 420, 707 P.2d 1057, 1059 (Idaho Ct.App.1985).

In reaching its decision on just compensation in this case the trial court pointed out that the expert witnesses, who testified concerning the value of the garbage routes owned by Garbage Service at the time of the taking, placed the value within a range from $39,552 to $800,000. The trial court concluded that Garbage Service should be awarded $262,574 as just compensation for the property taken by the City. In arriving at this value the trial court chose to use the "discounted future earnings method." This method was described in Pratt, *Valuing Small Businesses and Professional Practices* (1985), a treatise accepted as authoritative and reliable by one of the expert witnesses for the City. The City contends that the discounted future earnings method of valuation should not have been used, but that if it were used, the court should not have used a ten-year projection of future earnings with a ten percent discount rate. The City contends that this resulted in an excessive calculation of damages.

Even though one of the expert witnesses for the City testified that a different number of years and a different discount rate should have been used, there is evidence in the record to support the use of both the ten-year period of projecting revenue and the ten-percent discount rate employed by the trial court. Although there was much conflicting evidence about the value of what was taken from Garbage Service, under the standard set forth in *Eagle Sewer Dist.*, we uphold the valuation of the trial court.

### IV.

### ALLOWANCE OF INTEREST FROM THE DATE OF TAKING

 The trial court granted Garbage Service interest on the damages awarded from the dates of the takings. This was proper, since art. 1, § 14 of the Idaho Constitution provides that private property shall not be taken "until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor." This Court has adopted a rule that in a condemnation case interest should be awarded from the time the condemning party takes possession or becomes entitled to possession of the property. *Independent School Dist. of Boise City v. C.B. Lauch Const. Co.*, 78 Idaho 485, 493, 305 P.2d 1077, 1082 (1957). In an inverse condemnation case a party whose property has been taken should be entitled to interest on the value of the property from the date of the taking. Otherwise, the party from whom the property was taken would have been deprived of both the property taken and the use of the just compensation during the period from the taking until the amount of the just compensation for the property taken is determined. This would violate the intent of art. 1, § 14 of our constitution.

### V.

### CONCLUSION

The partial summary judgment and judgment of the trial court are affirmed.

Costs to respondent.

No attorney fees on appeal.

BAKES, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, Chief Justice, concurring and dissenting.

I concur in much which is stated in the majority opinion, and write only to express my reluctance to join the majority in its decision that the action of the city in the instant case was a "taking" of respondent's "property." I agree with the majority that the question need only be considered from the standpoint of our state Constitution without recourse to the provisions of the Constitution of the United States. In my view the majority gives insufficient consideration to the question, while at the same time painting with such a broad brush that the police powers of municipalities within the state may be severely inhibited in the future.

I deem it clear that a municipality is authorized within the limits of its police power to regulate or prohibit certain activities when such exercise of authority bears a reasonable relationship to the public health, safety, morals or general welfare of its citizens. In some instances, while the exercise of that authority may have harmful effects on some of its citizens, if the exercise of that authority is reasonable and not arbitrary any injury occasioned thereby must be considered a servitude inherent under our system of government, and damages from such injury must be considered as *damnum absque injuria*. *Johnston v. Boise City*, 87 Idaho 44, 390 P.2d 291 (1964). In the instant case there appears no question raised by the parties but that the collection, hauling and disposal of solid waste is within the legitimate regulatory authority of the municipality. Likewise, I see no question raised that the city was acting arbitrarily, capriciously, or unreasonably in its action. In any event, it should be noted that the instant action comes before us as a result of summary judgment being issued against the city, and if any questions were presented relating to the above matters, they were improperly resolved at summary judgment.

It is appropriate to note that in this state, and in other jurisdictions, a substantial distinction has been drawn between cases involving the "taking" of *real* property and

interests therein, as contrasted with the taking of intangible property such as the contract rights of the respondent in the instant case. As to the "taking" of intangible rights through the exercise of the police powers of municipalities, there is a scarcity of authority in this and other jurisdictions.

I would note that most cases dealing with the question of inverse condemnation, have done so in the context of the taking of *real* property. *Robison v. H. & R.E. Local # 782*, 35 Idaho 418, 207 P. 132 (1922), obviously dealt with different times. There the Court stated:

A right to conduct a business is property. Incident to this property right is the goodwill of the business, and the right to appeal to the public for patronage. One may conduct his business in his own way, and may employ whom he will upon such terms as may be agreed upon, and may discharge any employee at will unless restrained by a valid contract so long as he violates no law. These rights are entitled to protection of the law.

That statement, however, was made in the context of reviewing an injunction issued by the trial court prohibiting picketing by a Labor union of certain business premises. The Court upheld in modified form the injunction issued to prohibit the picketing.

*O'Connor v. City of Moscow*, 69 Idaho 37, 202 P.2d 401 (1949), involved the validity of a municipal zoning ordinance which prohibited certain businesses in a certain area of the municipality. The plaintiff had owned certain property, and conducted a business thereon which would in effect be zoned out of existence. The Court struck down the ordinance stating:

An ordinance which prohibits the continuation of existing lawful businesses within a zoned area is unconstitutional as a taking property without due process of law and being an unreasonable exercise of the police power ... The effect of the provision of the ordinance here complained of is to deprive respondents of their property by preventing the sale of their business and restricting their leas-

ing of the real property for use in connection therewith.

A zoning ordinance deals basically with the use, not ownership, of property. The provision in question declaring a change in ownership to be a new business is an arbitrary and unreasonable exercise of the police power and violates the constitutional protection given by the due process clauses.

The decree of the trial court declaring said ordinance void and of no effect, and enjoining the city from applying it, was affirmed.

The case of *Winther v. Village of Weippe,* 91 Idaho 798, 430 P.2d 689 (1967) was, as noted by the Court, similar to *O'Connor v. City of Moscow, supra,* in that the trial court had adjudged a municipal ordinance to be unconstitutional and void when it attempted to restrict the number of beer licenses in the village. The Court said: "The facts in the instant case are indicative of a plan or scheme designed to eliminate respondents' business under color of municipal authority attempted to be exercised not only retroactively, but in an unreasonable, arbitrary and discriminatory manner."

The cases of *Hughes v. State,* 80 Idaho 286, 328 P.2d 397 (1958) and *Johnston v. Boise City,* 87 Idaho 44, 390 P.2d 291 (1964) both involve real property and access thereto from public streets. As the Court stated in *Johnston:* "This Court has consistently held that access to a public way is one of the incidents of ownership of land bounding thereon. Such right is appertenant to the land and is vested right." Hence, I view neither of said cases as bearing on the question presented in the instant case.

The only case in this jurisdiction which in my ·view bears even peripherally on the instant case is *Unity Light & Power Co. v. City of Burley,* 92 Idaho 499, 445 P.2d 720 (1968). There, Unity provided electrical energy in an area which became annexed to the city of Burley. Unity continued to serve its members in the annexed areas and continued to maintain its poles and transmission lines in the newly annexed area, although the city had never granted any franchise to Unity for that purpose. Burley also operated a municipal power system furnishing electrical energy to inhabitants of the city. Burley instituted proceedings seeking to condemn certain lines and other facilities of Unity. In my view the opinion of the Court is somewhat confusing since the $500.00 damages to Unity represented a taking of "property rights, including power lines, ..." and for contract interference. However, as noted by the Court in its opinion, the trial court's order (affirmed on appeal) restraining Burley from interfering with the operation of Unity, was at least partially based on a statutory "anti-pirating law."

As I view the majority opinion, the only case close to the circumstances of the instant matter is *Parker v. Provo City Corp.,* 543 P.2d 769 (Utah 1975). There the court held a municipal ordinance to be void as applied to the plaintiff. The ordinance made unlawful the collection, removal or disposal of garbage or waste matter, but the court held, "nowhere in the record do we find that this waste is garbage, kitchen refuse, or a by-product which may be deemed deleterious to the public health. The definition section of the subject ordinance makes a definite distinction between garbage and waste." In my view, the brief and terse opinion of the Utah court sheds no light on the matter in question here.

On the other hand, the cases from two other jurisdictions are remarkably similar to the instant case. In *City of Estacada v. American Sanitary Service,* 41 Or.App. 537, 599 P.2d 1185 (1979), Sanitary had a franchise from the county to perform solid waste collection services in unincorporated areas, and Walker had a franchise from the city to perform like collection service within the city's boundaries. "After the city annexed part of Sanitary's area, Walker claimed the right to serve that area. The city initiated this action, asking for a declaration that Sanitary 'has no vested property right or legally protected interest in the continuance of its service to areas encompassed in its county franchise which have been annexed....' Sanitary counterclaimed for damages based on a taking by

the city." The trial court held that Sanitary had "a vested property interest" in the annexed area and that a taking had occurred for which Sanitary was entitled to damages. The court of appeals reversed the holding of the trial court. In its opinion the court stated:

The Idaho Supreme Court in *Unity Light & Power Co. v. City of Burley*, 92 Idaho 499, 445 P.2d 720 (1968), arrived at a compromise by holding that the city could not 'pirate' the state created franchisee's customers in the annexed area for its own utility operation, but the city could refuse to allow the franchisee to expand its service to new customers in the area. While that solution has a certain facial attractiveness, it is difficult to discern the operating principal being applied, for the result was to amend judicially the terms of the very franchise being protected. The opinion rests on the concept that the franchise was both a valuable property and was subject to the same degree of regulation by the state after annexation as it was before.

We do not have before us a franchise created by a higher authority than the city. Nor do we have a situation where the city is directly or indirectly taking tangible assets of the franchisee for a public use....

In those circumstances we do not believe the city may be prevented from exercising its own power without first paving off the value of the county-created franchise. The trial court erred in holding that a failure by the city to honor the county franchise would be a taking within the meaning of article 1, section 18 of the Oregon Constitution.

*City of Estacada v. American Sanitary Service, supra,* was essentially followed in *Stillings v. Winston–Salem*, 311 N.C. 689, 319 S.E.2d 233 (1984). There the court stated:

The primary question presented for review is a matter of first impression for this Court: Does an exclusive solid waste collection franchise granted by a county remain effective in areas subsequently annexed by a city and thereby entitle the franchisees to compensation for a taking when the city, pursuant to statutory mandate, begins providing its own garbage collection service? For the reasons stated here, we answer the question in the negative and conclude that the Court of Appeals erred in finding a "taking" requiring compensation by the city of Winston–Salem.

In essence, plaintiffs contend that the City's extension of solid waste collection services into their franchise areas represented a governmental taking of their property for which plaintiffs are entitled to just compensation under the fifth and fourteenth amendments to the United States Constitution and under article 1 section 19 of the Constitution of North Carolina....

The franchisees in this case have no absolute rights with respect to their franchises. All rights are limited by neighboring rights, and when the rights of these franchisees are considered in the light of the rights of the public through the city of Winston–Salem, the franchisees' rights are subject to the rights of these others. The City, by exercising its duty, has not impinged upon or violated any of the rights of the franchisees. Furthermore, not every damage to private property by the government is subject to compensation. We conclude, then, that plaintiffs have no compensable injury.

The court further resolved the United States constitutional question noting *Loretto v. Teleprompter Manhatten CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982); *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Larsen v. South Dakota*, 278 U.S. 429, 49 S.Ct. 196, 73 L.Ed. 441 (1929); *Charles River Bridge v. Warren Bridge*, 36 U.S. (11 Peters) 420, 9 L.Ed. 773 (1837).

Hence, based on all of the above, I would hold that at the point of summary judgment the city's ordinance prohibiting the collection, hauling or disposal of solid waste is presumed valid, as against the claim of Coeur d'Alene Garbage, and Coeur d'Alene Garbage is effectively precluded

from operating within the newly annexed areas of the municipality. Further, I find nothing in the law of this jurisdiction which requires the payment of compensation for such loss of business, nor do I find any persuasive authority therefor in any other jurisdiction. If the opinion of my brethren might somehow be restricted solely to the instant case, abstract concepts of fairness might impel me to concur. However, as stated earlier, I believe the majority paints with a broad brush and future applications of the principles laid down here will, I believe, seriously impede upon the police powers of the municipalities in this state in the future.

BISTLINE, Justice, specially concurring:

Having concurred in the opinion authored by Justice Johnson, I write only to emphasize the strength of the statement that an existing business *is* property, and also to comment on the citation to *Hughes v. State of Idaho,* both appearing at (p. 591, 759 P.2d at p. 882).

### I.

Justice Johnson has written that "the right to conduct a business is property,"—which is absolutely correct. The underlying issue in the *Robison* case was the business owner's complaint that *access* to his place of business was being impaired by picketing union workers. No governmental action was involved and hence there was no claim of an inverse taking.[1] Injunctive relief was sought and obtained.

Similarly, in *O'Connor v. City of Moscow,* 69 Idaho 37, 202 P.2d 401 (1949), cited by Justice Johnson, also at p. 592, 759 P.2d at p. 883, the only relief sought was a declaration of the invalidity of an ordinance which in an arbitrary and unreasonable exercise of city police power deprived the O'Connors of their property.

The *Winther v. City of Weippe* case, cited along with *O'Connor,* was in all respects similar to the latter mentioned, both citing to and relying upon it. The three

cases spanned 45 years, and involved 15 different persons sitting where we five now sit. In one case only was there a single dissent. In the *O'Connor* case district judge Sutphen sitting in the stead and place of Justice Budge, did not vote with the majority because of his view that:

> The business of operating billiard and pool tables for gain and a beer parlor where draft beer is sold is not recognized as a useful business, although it is a lawful one, and I do not think it can seriously be contended that the City of Moscow does not have the authority to confine such business places to reasonable territorial limits within its borders.

69 Idaho at 45, 202 P.2d at 406.

In the *O'Connor* case Justice Hyatt, although he thereafter also cited to the *Robison* case, chose to borrow a more encompassing definition of property:

> Property has been well defined in *Spann v. Dallas,* 111 Tex. 350, 235 S.W. 513, 514, 19 A.L.R. 1387, as follows:
>
> > Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal. Anything which destroys any of these elements of property, to that extent destroys the property itself. The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right.

69 Idaho at 42, 202 P.2d at 404.

It was a unanimous Court which in *Winther* quoted the foregoing passage (and more) from *O'Connor* as the predicate for its judgment and opinion. It can safely be stated that an established business *is property.*

### II.

*Hughes v. State,* 80 Idaho 286, 328 P.2d 397 (1958), also cited in the Court's opinion (p. 592, 759 P.2d at p. 883), received some, but certainly not due, consideration in the recent case of *Merritt v. State of Idaho,* 113 Idaho 142, 742 P.2d 397 (1986). Justice

---

1. The doctrine of inverse condemnation had yet to be declared.

Johnson today correctly cites it for the proposition that "[p]rivate property of all classifications may be taken for public use." That statement in *Hughes* was made subsequent to a prior paragraph in *Hughes* which read:

> We now approach the proposition, whether appellants' allegedly destroyed easement, *constituting the right of vehicular access* of the public generally to their property for business purposes, is property capable of being "taken" and capable of severance from the property to which it appertains and of which it is a part.

80 Idaho at 293, 328 P.2d at 400 (emphasis added). And, immediately following the single sentence which Justice Johnson utilizes, this Court in *Hughes* went on to state the holding that:

> Real property includes "that which is appurtenant to the Land." I.C. sec. 55–101. It includes all easements attached to the land. I.C. sec. 55–603. It includes hereditaments, whether corporeal or incorporeal, such as easements, and every interest in lands. 73 C.J.S. Property § 7, p. 159.
>
> Easements are included in the classification of estates and rights in lands which may be taken for public use. I.C. sec. 7–702.

80 Idaho at 293, 328 P.2d at 400.

Thereafter, in order, the opinion presented authority substantiating that holding (including a case decided 80 years ago which held that "Any destruction, interruption or deprivation of the common, usual and ordinary use of property is by the weight of authority a taking of one's property in violation of the constitutional guarantee." *Knowles v. New Sweden Irr. Dist.*, 16 Idaho 217, 231, 101 P. 81, 86 (1908)), and then gave a somewhat expanded version of the one-liner quoted by Justice Johnson, saying more fully:

> Our review of Idaho's Constitution, statutes and decisions, clearly shows that the power of eminent domain extends to every kind of property taken for public use, including the right of access to public streets, such being an estate or interest in and appurtenant to real property; and since such right of access constitutes an interest in, by virtue of being an easement appurtenant to, a larger parcel, the court, jury or referee *must ascertain and assess* the damages which will accrue to the portion not sought to be condemned by reason of the severance of the portion—the right of access—sought to be condemned, and the construction of the improvement. I.C. sec. 7–711.
>
> We therefore hold that appellants' allegedly destroyed right of business access to their business property, if such be proven, constituted a taking of their property, whether or not accompanied by a taking of physical property, and constituted an element of damage, as dues also any element of alleged taking of their physical property, ...

80 Idaho at 295, 328 P.2d at 402.

Unfortunately, as considerations of law are concerned, and unjustly as considerations of justice be concerned, the majority opinion in *Merritt* did not comprehend what had been held and stated in *Hughes*, and by selective reading came up with the untenable understanding that all vehicular access had to be "*destroyed*," 113 Idaho at 144, 742 P.2d at 399, notwithstanding that the *Hughes* court's opinion stated that essential questions presented were "(a) whether the destruction *or impairment* of access constitutes a taking of property, and (b) whether destroyed *or impaired* access must be accompanied by a taking of physical property to constitute an element of damages." 80 Idaho at 292, 328 P.2d at 403 (emphasis supplied).

Expecting that it might be asked what is the point in discussing the *Merritt* case, the answer is readily made. In this case now before us inverse condemnation is the issue. It was also the issue in *Hughes*, and again in *Merritt*. *Hughes* was not even understood by the majority in *Merritt*, where Justices Bakes and Donaldson formed a majority by joining with Justice Huntley.

This they did notwithstanding the caution extended by Justice Shepard, where he quoted directly from a then recent perti-

nent opinion authored by Justice Donaldson, with whom Justice Bakes had concurred. Justice Donaldson, joined by Justice Bakes a short time before *Merritt* had this view of the *Hughes* [and *Mabe*] holdings:

> The right of access of a property owner to an abutting public street has long been the subject of judicial discourse in Idaho. A thorough review of authority reveals it is a right which Idaho courts have been particularly careful to protect.... Nor is *interference with access* merely an element of severance damages to be considered in an action for condemnation, but *is in itself a property right* the taking of which may be compensated in an action for inverse condemnation, that is 'whether or not accompanied by a taking of physical property.' (Citing *Hughes* and *Mabe v. State*, 83 Idaho 222, 86 Idaho 254, 360 P.2d 799, 385 P.2d 401).

Chief Justice Shepard in *Merritt v. State*, 113 Idaho 142, 146–147, 742 P.2d 397, 401–02 (1986), quoting the dissent of Justice Donaldson, joined by Justice Bakes in *State v. Bastian*, 97 Idaho 444, 546 P.2d 399 (1976). Following which, Justice Shepard went on to add in *Merritt:*

> Although our previous cases are not totally clear, I believe the law of Idaho is, or should be, that a landowner whose property abuts a public street or road and enjoys access thereto cannot be summarily deprived of that property right without compensation. This I believe regardless of what the law may be in other jurisdictions. Although the public necessity and convenience may demand the taking of property, such may not be done without an award of just compensation. No argument regarding the safety or convenience of the general public justifies the taking of such a property right absent just compensation.

*Merritt, supra,* 113 Idaho 147, 742 P.2d at 402.

In my *Merritt* dissent, I spoke similarly by quoting from a brief authored by counsel for the State in the case of *Lobdell v. State of Idaho*, 89 Idaho 559, 407 P.2d 135 (1965):

> While no clear cut rule existed in 1957 at the time respondents constructed the highway adjacent to appellants' premises, nevertheless on several occasions since then *this Court has determined and declared that access rights are a property interest.* See *Hughes v. State,* (1958), 80 Idaho 286; 328 P.2d 397. Clearly then when the state acquires existing access between privately owned real property and the public highway it comes into possession of a real property interest. *This rule has been applied to some forms of impairment.* See *State ex rel Rich v. Fonburg,* (1958), 80 Idaho 269; 328 P.2d 60, and *Farris v. City of Twin Falls,* (1958 [1959]), 81 Idaho 583; 347 P.2d 996.

*Merritt v. State,* 113 Idaho at 148, 742 P.2d at 403 (emphasis added).

Following which was added my own thought that:

> That brief also could have cited the then even more recent case of *Mabe v. State,* 83 Idaho 222, 360 P.2d 799 (1961), which reaffirmed *Hughes,* and also discussed *Farris* and *Fonburg,* of which the Highway Department had to be well aware when it stipulated to a taking in the *Lobdell* case.

*Id.* 148, 742 P.2d at 403. All of which should establish to any reasoning mind that *Merritt* was wrongly decided, and is a travesty. Whenever *Hughes* is correctly cited and relied upon, as is so today, it seems in order to point to the mischief which was occasioned when it was negligently misread by the author, who was joined by two justices who had expressed just the opposite view earlier. At West Publishing Company the person in charge of writing the headnotes depicting the holdings in the opinion was aware that the Court in *Hughes* was considering destruction *or* impairment of access as being a compensable taking. *See* headnote 6, 80 Idaho at 288, 328 P.2d at 399.

Regretfully I register my disappointment that today it is Chief Justice Shepard who seemingly does not entertain the same view which he displayed so convincingly in *Merritt.* He sees *Robison* as having dealt with

different times, and correctly notes that the relief sought was injunctive. He correctly points to the same in *O'Connor*. As mentioned earlier, however, no governmental authority was involved in *Robison*, and, as to *O'Connor*, inverse condemnation did not become a remedy in Idaho until *Renninger v. State*, 70 Idaho 170, 213 P.2d 911 (1950). The best conclusion which I am able to draw is that the Chief Justice adheres to the view that real property, or interests therein are subject to condemnation and inverse condemnation, but that an established business is not. That I do not understand.